*In the matter of the Petition of* NETTIE SNOOK *for a Writ of Habeas Corpus.*

CUSTODY OF CHILD — *Rights of Mother.* In a *habeas corpus* proceeding by a mother, the father being dead, to obtain the custody of an infant child from its paternal grandparents, who have had the care and possession of the child from infancy, the future welfare of such child is the paramount consideration; and, under the evidence in this case, it is *held* that the best interests of the child will not be subserved by removing her from the custody of the grandparents.

*Original Proceeding in Habeas Corpus.*

PETITION of *Nettie Snook* to obtain the custody of her infant daughter from Isaac V. Tissue and his wife. The facts appear in the opinion herein, filed November 10, 1894.

*W. D. Atkinson,* and *Call & Ingalls,* for petitioner.
*Welch & Wilson,* for respondent.

The opinion of the court was delivered by

JOHNSTON, J.: This is a proceeding instituted by Nettie Snook, formerly Nettie Tissue, to obtain the custody of her infant daughter, Goldie C. Tissue, who is about five years of

age, from Isaac V. and Cynthe Tissue, the paternal grandparents of the child. John Tissue, the father of Goldie, was killed in a railroad accident in December, 1889, and not long afterward the petitioner left the child with her grandparents, who have since provided for and treated her as their own child. The sum of $500 was paid by the railroad company for causing the death of John Tissue, and the petitioner was appointed administratrix of the estate. Shortly afterward the petitioner intermarried with James Snook, and two children have been born from that marriage. More than two years ago Snook moved from Parsons to Argentine, where he obtained employment in a smelter, and the wages which he receives are $2 per day. Since their removal from Parsons, the petitioner has not visited Goldie, nor does it appear that she has corresponded with the Tissues concerning her. A short time ago, Nettie Snook was cited, as administratrix, to appear before the probate court of Labette county, and make a settlement of the estate in her charge. Some differences arose between the parties as to this settlement, and Nettie Snook then, for the first time, demanded the possession of Goldie, and that being denied, she brought this proceeding. In answer, the grandparents alleged that the petitioner abandoned the child when it was about 10 months of age, and since that time had refused to care for her, or provide anything for her support and maintenance. They state that since she was left with them they have cared for and treated her as their own child; that they have no one to support other than this child except one daughter 14 years of age; that they own property in the city of Parsons of the value of $2,000, and are able and willing to care for and educate Goldie, and will treat her as one of their own children. They further allege that the petitioner is an unfit person to rear the child, has not shown any interest in her welfare for the past two years, and is only moved now by a spirit of revenge to obtain her custody and give her to some other persons.

While the testimony does not show an absolute gift of the

child to the grandparents, it tends strongly to sustain the claim that she was given to or left with them with the understanding that they would care for and raise her the same as their own child. Goldie has lived with them for three years or more, and during that time it is evident that she has received watchful care and attention. It is shown that, while they are people of limited means, they possess a comfortable home and some other property, and that the grandfather is a capable mechanic who is employed at Parsons. They are respectable, worthy people, who have become warmly attached to Goldie, and evidently treat her with the greatest kindness and consideration. They express a strong desire to retain the custody of the child, and give her such training and education as they can afford. Without examining in detail the conduct of the petitioner, it is enough to say that the greater part of the time since her marriage with Snook her actions have indicated a relinquishment of parental control and custody to the grandparents. She has shown but little solicitude for the child since her removal from Parsons, and perhaps this may be accounted for by the fact that she believed the child to be in good hands. At any rate, the testimony is that during that time she has never visited the child, nor until the present difficulty arose made any inquiry concerning her. It appears that the petitioner has been married three times, and has had three sets of children. By her first husband she had one child, who now resides with her, and is about eight years of age; and by her third husband she has two children, one of which is about three years of age, and the other is a babe. While it appears that Snook is an industrious man and at present has employment, it necessarily requires the moderate wages which he receives to care for the the family which he already has. He appears to be entirely willing to assume the additional burden of caring for Goldie, but in view of all the circumstances we do not deem it best that a change in her custody should be made. Although the mother is the natural guardian, and under the general rule is entitled to the custody of her child, it cannot be insisted on

as an absolute right. The controlling consideration is, what does the best interest of the child require?

"We understand the law to be, when the custody of children is the question, that the best interest of the children is the paramount fact. Rights of father and mother sink into insignificance before that. Even when father and mother are living together, a court has the power, if the best interests of the child require it, to take it away from both parents, and commit the custody to a third person." (*In re Bort*, 25 Kas. 308. See, also, *Chapsky v. Wood*, 26 id. 650.)

In view of all that has been shown before us, we have reached the conclusion that for the present, at least, the interests of the child will be best promoted by allowing her to remain in the custody of her grandparents. If, by reason of any misfortune or on account of the death of the grandparents, the circumstances should change so that the best interests of the minor would be best subserved by a change of custody, application can be made to any court of competent jurisdiction to effect such change. In the meantime, the petitioner will be allowed on suitable occasions to meet and visit with the child at the home of the grandparents. The application will be denied, at the costs of the petitioner.

All the Justices concurring.