No. 28,948.

In re JEWELL HODSON; W. E. HODSON, Petitioner, *Appellant,* v. WALTER SHAW et al., Respondents, *Appellees.*

(280 Pac. 761.)

Opinion filed October 5, 1929.

*T. A. Noftzger, George W. Cox* and *Lawrence Weigand,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris* and *George B. Powers,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is a proceeding in habeas corpus commenced in the district court of Sedgwick county by W. E. Hodson to obtain the custody and control of his daughter, Jewell Hodson, from the respondents, Walter Shaw and Rachel Shaw. The court denied the custody of Jewell Hodson to the petitioner, W. E. Hodson, and gave that custody to the respondents, Walter Shaw and Rachel Shaw. W. E. Hodson appeals.

The district court heard the evidence and made findings of fact and conclusions of law as follows:

"1. That Jewell Hodson is a minor, born on the 4th day of June, 1915, and one of the children of the petitioner and his wife who died in 1918.

"2. That after the death of the petitioner's wife, Jewell Hodson, together with her two sisters, Dorothy and Archie, who are both older than Jewell, was left in the custody of Mrs. Rose Silknitter, a sister of the petitioner, in Wichita, Kan.

"3. In the month of November, 1919, Walter Shaw and Rachel Shaw, the respondents herein, requested Mrs. Silknitter to let them take Jewell Hodson home with them, which request was granted, and Jewell Hodson has resided since that time with the Shaws, visiting occasionally with Mrs. Silknitter and, at one time, she visited with her father in Texas.

"4. The Shaws reside on a farm and have a good home and they have provided Jewell with a good home and the necessary clothing and have sent her to school and Sunday school. She is now attending high school in Mulvane, Kan., where Mr. Shaw takes her regularly to school. She is now past thirteen years of age and has expressed a desire to remain with her foster parents, the Shaws.

"5. In March, 1926, the petitioner, W. E. Hodson, was sentenced by the United States district court at Wichita to the federal penitentiary at Leavenworth, Kan., for a period of three years, but was paroled before the expiration of his full term.

"6. While the petitioner was in the county jail of Sedgwick county, before being taken to the federal penitentiary, Mr. Shaw requested Hodson to allow Jewell to be adopted by Shaw, but this request was refused.

"7. In June, 1926, the Shaws attempted to adopt Jewell Hodson through a proceeding in the probate court of Sedgwick county, Kansas. This attempt was made by one of the probation officers of the probate court filing an affidavit in the juvenile court that Jewell Hodson was a neglected child, and the juvenile court then attempted to have the child given to the care of the Wichita Children's Home and then the Wichita Children's Home surrender the child to the Shaws. This proceeding was had without any notice to the petitioner or to his sister, Mrs. Silknitter. The Shaws knew at the time where Mr. Hodson was and where Mrs. Silknitter lived.

"8. At the time Mrs. Ozola Koontz made the affidavit in the juvenile court, concerning Jewell, she knew or easily could have ascertained where the relatives of Jewell were, and she made the affidavit at the request of the Shaws. Jewell Hodson was never actually placed in the children's home and was not out of the custody of the Shaws during the proceedings in the juvenile court.

"9. The Shaws regard Jewell as their own child and there exists between them and Jewell a mutual love and affection. They are highly respected people and are financially able to give Jewell a good home and good education. They have no children of their own.

"10. The petitioner resides at Flint, Mich., and Jewell has never been there and does not wish to go. The petitioner and his other daughters live in Flint, Mich., where he is employed in the Buick automobile factory.

"11. The court believes and finds that it will be for the best interests and welfare of Jewell that she remain in the custody and care of the respondents, Walter Shaw and Rachel Shaw.

"12. The court finds that although it is for the best interests of Jewell that she remain with the Shaws, that her father and sister should be allowed to visit with her.

"13. The court is not able to say from the evidence that the petitioner is a proper person to have the care and custody of Jewell.

### "Conclusions of Law.

"1. The pretended proceedings in the juvenile court for the adoption of Jewell Hodson by the Shaws was void, and the juvenile court and the probate court had no jurisdiction in the case.

"2. It will be for the best interests and welfare of Jewell Hodson that she remain in the custody and care of Walter Shaw and Rachel Shaw, and they are the proper persons to have her care and custody.

"The writ of habeas corpus is denied."

In determining questions of this character courts must take into consideration two things: one, the right of the parent to the custody of his child; and the other, the welfare of the child.

In *Melroy v. Keiser*, 123 Kan. 513, 255 Pac. 978, it was declared that—

"The father of a minor child (the mother being deceased) who has never legally surrendered his right to the custody of the child, and who is not found or adjudged to be an improper person to have such custody, is entitled to the custody of the child." (Syl. ¶ 1.)

This principle has often been stated by this court—three times in 123 Kansas: the case just cited; *In re Kailer*, 123 Kan. 229, 255 Pac. 41; and *Wood v. Lee*, 123 Kan. 669, 256 Pac. 797. Many other cases might be cited.

In *Chapsky v. Wood*, 26 Kan. 650, this court said:

"The parents are the natural guardians and *prima facie* entitled to the custody of their minor child, as well as chargeable with the obligation of its support.

"A child is not in any sense like a horse or other chattel, subject matter for absolute and irrevocable gift or contract.

"A parent's right to the custody of a child is not like the right of property, an absolute and uncontrollable right. It will never be enforced where its enforcement will obviously destroy the happiness and well-being of the child.

"In such cases three rights or interests are to be regarded: First, that of the parent; second, that of those who have for years discharged all the obligations of parents; and third, and chiefly, that of the child." (Syl. ¶¶ 1, 2, 3, 5.)

Another case is *In re Snook, Petitioner*, 54 Kan. 219, 38 Pac. 272, where this court said:

"In a habeas corpus proceeding by a mother, the father being dead, to obtain the custody of an infant child from its paternal grandparents, who have

had the care and possession of the child from infancy, the future welfare of such child is the paramount consideration; and, under the evidence in this case, it is held that the best interests of the child will not be subserved by removing her from the custody of the grandparents." (Syl.)

A large number of cases from this court might be cited to support this rule, but it is unnecessary to make further citations.

On the trial of the present action the court had before it the father, the child, and those who had cared for her since her babyhood. Under such circumstances the correct determination of the controversy depended largely on the sound discretion of the trial court. Unless the record shows that such discretion was abused, the judgment will not be disturbed. A host of cases from this court may be cited to support the rule just declared. The rule has been stated so many times that every lawyer practicing in the supreme court has knowledge of it. For that reason citation of authorities would be useless.

It follows that the judgment must be and is affirmed.