No. 29,985.

ELIZABETH SMITH, *Appellant,* v. DAVE SCHEUERMAN and SOPHIA
SCHEUERMAN, *Appellees.*

(299 Pac. 616.)

Opinion filed
June 6, 1931.

*R. C. Russell,* of Great Bend, and *E. A. Schwartzkopf,* of La Crosse, for the
appellant.

*W. H. Russell, Frank U. Russell* and *Donald A. Russell,* all of La Crosse,
for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was a proceeding in habeas corpus between
two sisters for the custody of a child.

Plaintiff was the child's mother. The defendant Sophia Scheuer-
man is the child's aunt, who has had charge of its rearing for several
years.

Shortly before this action was begun the child's mother sought
to obtain custody of it by force while it was attending school. A
hurried telephone call brought Sophia to the scene, and she slapped
her sister and sat on her. This lawsuit followed.

Plaintiff's petition for the writ alleged that she was the natural
mother of Nadine Smith, a minor nine years old, and entitled to her
care, custody and control, and that the child was restrained of her
liberty by defendant Sophia and her husband, "the cause or pre-
tense of said restraint being unknown to your petitioner," and that
plaintiff's demand upon defendants for the surrender of the child's
custody had been refused.

The answer and return of defendants alleged that their custody of the child was legal, that she had been placed in their custody by plaintiff three years previously, and that their custody was for the child's best interests. Answering further, they alleged—

"That respondents are so situated financially as to be able to and they are giving the said child the benefits, training, nurture and care of a salutary home life, as a child of their own; that they are sending her regularly to school, taking her with them to Sunday school and church services, providing for her, giving her the best of care and affection, and in all things seeking to throw around her the best environment possible and make of her a noble and virtuous woman.

"That the said petitioner is not a suitable person to have the custody of the said child in this, to wit:

"That she is married, but living apart from her husband; that she has no established home but works as a domestic in the homes of her employers as occasion may find them. That petitioner cannot give the said child proper nurture, care and training, has no disposition to do so, and will not if given the custody of the said child. That the said petitioner is of bad reputation and is irreligious, profane, indecent and immoral, and not a fit person to have the care and custody of the said minor child."

The evidence tended to show that the child, Nadine Smith, had first been brought to defendants' home by the plaintiff mother when it was between four and five years of age. Sophia kept it for six months. The mother then took it to Kansas City for six months, but eventually sent it back to Sophia because she was not able to keep and feed it properly. At that second sojourn in defendants' home the child stayed from March until August, when plaintiff took it back to Kansas City. Sophia testified:

"She did not want to take her. I asked her to take her back, because Nadine was old enough to go to school; she took her back and kept her about ten days, and said, 'Sophia, you are going to have to take care of this child, I can't do it.'"

That occurrence was three years ago. Since that time Nadine has been in the custody of Sophia and her husband. They have sent her to public school and Sunday school and given her proper home training. The evidence tended to show that until about a year before this lawsuit began plaintiff, the child's mother, had no fixed place of abode, that she was living apart from her husband, and that she was inclined to drink and swear and keep late hours with men, some of whom were married.

However, the evidence also tended to show that about a year before the trial plaintiff had procured employment as a domestic

servant in a respectable home in Great Bend, since which time she has been behaving discreetly, and that her employers were so well disposed towards her that they were willing that the child reside with plaintiff in their home. The other evidence pro and con need not be rehearsed.

The trial court, without request from either side, made certain findings of fact, some of which read:

"II. Elizabeth Smith is a married woman, living apart from her husband; they having separated about three years ago. The evidence shows that the separation was caused by the association of the petitioner with other men.

[At the oral argument we were advised that she has been divorced from her husband since this finding was made.]

"III. Several months after the separation Mrs. Smith obtained employment as a domestic in a home at La Crosse, where she worked for about a year and a half, and for the past year has been employed as a domestic in a home at Great Bend.

"IV. The petitioner during the time of her residence at La Crosse was addicted to the use of profane language, and on at least one occasion drank intoxicating liquor, and during such time her reputation for chastity and morality was bad in that community.

"V. Petitioner during her residence at La Crosse frequently kept company with men other than her husband, and has continued to do so during her residence at Great Bend. During her residence at La Crosse and while Nadine Smith was in the custody of the Scheuermans petitioner visited her daughter about once a week, usually for short periods of time, but her visits have been much less frequent since she has lived at Great Bend. She has furnished some of the clothing for her daughter, and has paid for an operation which her daughter had about two years ago.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"VII. Respondents have had Nadine in their home for more than three years, and had her for two periods of about six months each prior to that time. Nadine was brought to the home of the respondents about three years ago by her mother, and they were told by her they would have to care for Nadine, as the mother was not able to take care of her. Nadine was brought to the home on the prior occasions under practically the same circumstances. During the time the mother was working as a domestic in La Crosse the respondents tried to get the petitioner to take Nadine and send her to school, but the mother refused to do so, giving as her reasons that she did not want to be tied down by having to take care of the child."

The trial court's conclusion of law was that it would be for the best interests of Nadine Smith to remain in the custody of the respondents, and judgment was accordingly entered in their behalf.

Plaintiff appeals, contending, among other matters, that the evi-

dence was insufficient to prove that she was an unfit person to have the custody of her own daughter.

It will be noted that the trial court refrained from making a specific finding on that vital matter, the only one which would justify a judgment depriving a mother of the custody of her own child. It is true, of course, that the trial court was of the opinion that it would be for the best interests of the child to remain in the custody of her uncle and aunt, but the rule of law is absolute that what is for the best interest of a child is its parent's exclusive concern—not a matter for judicial arbitrament—except where the parent is an unfit person to have such custody. (*Whittaker v. Coffman*, 112 Kan. 597, 598, 211 Pac. 1116, 212 Pac. 912; *In re Kailer*, 123 Kan. 229, 255 Pac. 41; *Melroy v. Keiser*, 123 Kan. 513, 255 Pac. 978. See, also, *Hollis v. Brownell*, 129 Kan. 818, 284 Pac. 388.) In so far as the case of *Hodson v. Shaw*, 128 Kan. 787, 280 Pac. 761, may be construed as stating a rule at variance with this principle, it is disapproved.

While the evidence for appellees tended to show that plaintiff was wayward and perverse in speech and conduct prior to securing employment as a domestic servant in the home of a physician and his wife in Great Bend, about a year before this action was tried in the court below, there was persuasive evidence that her behavior had been exemplary since that time until the incident where she sought by forcible means to repossess herself of the child at the schoolhouse. The fact that she relapsed into profanity and violence under the stress of that incident ought not to weigh materially against her, since it was manifestly provoked by the frustration of her maternal instincts.

A majority of this court attach a good deal of significance to the failure of the trial court to make a specific finding that plaintiff was not a fit person to have the child's custody. The trial court did find that at the time of her residence in La Crosse (more than a year before this action was begun) plaintiff's reputation for chastity and morality was bad, but that was somewhat remote in point of time. Moreover, the legal consequence of such a reputation is not that of being deprived of the custody of one's own natural-born children. A judicial declaration to that effect would be revolutionary indeed. Some of the justices of this court are much impressed with the fact that the trial court based its judg-

ment on plaintiff's waywardness which was past and gone, and they cannot discern sufficient evidence in the record to show plaintiff's unfitness at the time she sought the court's aid to recover her child.

For these reasons the judgment of the district court is reversed and the cause remanded with instructions to enter judgment for plaintiff.

JOHNSTON, C. J., concurs in the reversal of the judgment but is of opinion that the cause should be remanded with instructions to the trial court to make a specific finding of fact on the point whether or not the petitioner was a fit person at the time of the trial to have the custody of her child.

DAWSON, J., dissents, being of opinion that the evidence appearing in the abstract and counter abstract abundantly proves the unfitness of the plaintiff to have the custody of the child; and that the evidence to show that plaintiff had mended her ways within the year next prior to the trial was not so persuasive as to justify this court in holding that the trial court was bound to give it credence. Moreover, the fact that the trial court did not make a specific finding of unfitness is of no consequence, since it was not asked to make that or any other finding, nor was its omission called to the court's attention on the motion for a new trial.

I trust I shall not appear to be criticizing the judgment of this court unduly if I remark that it can best be explained by frankly acknowledging that where the custody of a child is the matter to be reviewed justices of this court are just as human as other people. Such a controversy addresses itself to our hearts and consciences as does no other subject requiring our determination. Even when such cases are merely before us on appeal we are apt to forget that we are not triers of fact; that the court which did hear and see the witnesses is the tribunal whose responsibility it is to determine the weight and credence of the evidence; and that we should accept as binding its conclusions of fact where, as here, there is substantial evidence for their support.