No. 33,648

OLGA OVERBAY, *Appellant,* v. DAVID L. OVERBAY, *Appellee.*

(75 P. 2d 234)

Opinion filed January 29, 1938.

*George W. Donaldson,* of Chanute, for the appellant.

*Ross B. Smith,* of Erie, and *Claude M. Brobst,* of Chanute, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The plaintiff brought an action for separate maintenance against her husband, David L. Overbay. The defendant filed a cross petition asking for a divorce from the plaintiff on the ground of extreme cruelty and gross neglect of duty. A divorce was granted the defendant and a division of the property was directed. This appeal is from that judgment.

It is contended that the testimony is insufficient to support the judgment granting the divorce. The parties were married in 1925. No children were born of this marriage. The plaintiff was several years older than the defendant. The plaintiff had three children by a former husband, aged seven, five and three at the date of the marriage.

The evidence tended to show that the children of plaintiff were

unruly, and that plaintiff could not or would not control them, nor would she permit the defendant to correct them in any manner; that the plaintiff made many attempts to have the defendant arrested by the officers of the police department because defendant attempted to correct the children when they were conducting themselves in an improper manner. There was testimony that the police officers were called to the home of defendant on many occasions, but that at no time was the defendant arrested; that the children would steal things and get into various kinds of trouble; that the second boy had been arrested about a dozen times, and was in fact in jail at the time of the trial. It was further shown that the parties had been separated seven times because of these differences over the children.

The chief of police testified:

"Q. Do you remember whether you or your police force were called out to the home of Mr. Overbay at different times by anyone to quell disturbances? A. Yes, sir; they were called out several times; I was out several times myself and the boys went out several times.

"Q. When you went yourself, tell the court what your finding was or what you found when you got there in regard to Mr. Overbay's conduct. A. Well, it was practically all trouble over the children. They separated once there when they lived on South Grant and I was out there. They was separated and Dave was going to leave and they were talking about dividing up and taking his chickens, and I persuaded him to leave the chickens, and I tried to get them to go back together, but there was no show for that, and I told them if I couldn't live a different life than they were living, I would try some way to divide up and settle up; it was no use living that way. We got tired of going out there. We were out there time after time, and almost every time it was over the children. On South Grant, I believe it was, somewhere in the neighborhood of the 1200 block, I believe that was the last time I was out—it was trouble over the boy—no, over the girl at that time, and Dave was trying to correct her. I told Mrs. Overbay I thought she was wrong; that she ought to listen to Mr. Overbay, and I wasn't trying to take sides one way or the other, but was trying to keep them together, and I told Mrs. Overbay I thought she was wrong; that Mr. Overbay was right; that he should have something to say about the children, but it was no use, so we left them still quarreling."

There was testimony that plaintiff frequented night clubs and beer parlors and neglected her husband and children. On one occasion defendant returned home from his work unexpectedly at 10:30 in the evening and found his wife away. He, in company with a neighbor, found her at a night club. She hardly knew the defendant and refused to return home with him. She attempted to

excuse this conduct by stating that she was in the company of defendant's brother or father. It was also shown that defendant turned over his pay checks to the plaintiff; that she was buying a home through a building and loan association; that she permitted the payments to become in arrears for seven months, and the property was conveyed to the building and loan association. At one time she gave a check when there were no funds in the bank, and the police were sent to the home to investigate the matter; the defendant made the check good.

It appears that the plaintiff had an uncontrollable temper and excitable disposition; that when the defendant returned home from his work the night of the final separation, the plaintiff had a gun in her hand at the time she was talking to the defendant. Plaintiff testified that she was not faking—that defendant was not worth killing. As to the incident with the gun, the record shows:

"Q. You drew it on him. A. I didn't draw it at all. I held the gun in my hand, like that.

"Q. Were you faking? A. No, I wasn't faking; he isn't worth killing."

After a careful examination of all of the evidence in the case we are unable to say the judgment was not supported by sufficient evidence, or that the court committed error in granting a divorce to the defendant. (*Miller v. Miller*, 128 Kan. 498, 278 Pac. 717.)

Complaint is made concerning the division of the property. The home place was given to the defendant. This property was encumbered for $1,600 or $1,700, and the court remarked at the close of the testimony that "in fact, there might be some question as to whether there is any equity in the property." The wife was given the household goods and the sum of $300, payable semimonthly. Under the facts disclosed by the testimony, we think this was a fair and just settlement.

Finding no error in the record, the judgment is affirmed.

WEDELL, J., not sitting.