No. 36,633

HENRY J. HAYN, *Appellee*, v. MARION Y. HAYN, *Appellant*.

(175 P. 2d 127)

190

Opinion filed December 7, 1946.

*I. H. Stearns* and *E. P. Villepigue,* both of Wichita, were on the briefs for the appellant.

*Robert C. Foulston, George Siefkin, Samuel E. Bartlett, George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter* and *T. E. Woods,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by a husband for divorce, custody and control of a child and division of property. Defendant's answer denied plaintiff's charge of defendant's gross neglect of duty and extreme cruelty and in her cross petition defendant charged the plaintiff with the same faults. She sought a divorce, custody of the child, division of property, alimony and attorneys' fees.

The court granted plaintiff a divorce on the grounds alleged in his petition, gave plaintiff the automobile, awarded the custody and control of the seven-year-old daughter to the wife's parents, retained jurisdiction of the case for the purpose of making an order with reference to support of the child by the father, a veteran, until he obtained employment, directed that certain life insurance policies on the life of the plaintiff be assigned irrevocably to the wife's father with the minor child designated as the beneficiary, ordered plaintiff to keep the premiums thereon paid, denied alimony and attorneys' fees to the defendant and taxed the costs to the plaintiff. Defendant appeals from every portion of the judgment except the order taxing the costs.

Error is charged in the granting of a divorce to appellee and in refusing to award it to appellant. The contention therefore concedes the evidence warranted a severance of the marriage relation. Appellant did not demur to the evidence of appellee but now contends it was insufficient to sustain a decree of divorce in appellee's favor. We do not deem it necessary to narrate in detail the evidence adduced by and on behalf of appellee. Some of the salient facts were:

This was appellee's first marriage and appellant's third; the parties met at Wichita in December, 1937; appellant had sued her second husband for a divorce the preceding September and was divorced in January; these parties were married February 10, 1938, in Oklahoma; one child, Saundra Sue, was born of the marriage; prior to entering the military service appellee was the manager of the Lassen Hotel at Wichita; his compensation was $300 per month plus a percentage of the earnings and his living quarters were provided in the hotel; at the time of his marriage he had approximately $3,000; the parties lived in the hotel and did not own a residence property; appellant had spent very little time with the child; her parents, Mr. and Mrs. Murphy, had taken care of the child since its birth; appellee entered the army as a captain in June, 1941, went overseas in May, 1943, served in the Pacific campaign and returned for a brief period in December, 1944; he again went to the Pacific and was discharged in October, 1945; he received terminal pay beginning November, 1945, and ending January 14, 1946; when he entered the service he had approximately $5,000 in bonds and cash and an automobile.

Among other things the record further, in substance, disclosed these pertinent facts:

Difficulty had arisen between the parties and their marriage relation ceased to be a happy one; when appellee left for overseas his wife inquired of him whether he would give her a divorce; she stated she didn't care if he never came back, that he was worth more dead than alive; during his absence overseas appellant became involved in an affair with one Dean Pricer which resulted in the filing of a damage action by Pricer's wife against appellant for alienation of affections; appellant apparently had many other men friends with whom she attempted to make engagements; she spent many evenings with a man in his room at the Broadview hotel, remaining there on occasions as late as midnight; appellant did not love appellee when she married him; she was disappointed in her failure to marry another person to whom she had been engaged and married appellee on the rebound.

Touching his earnings while in the service and some other matters appellee's testimony, in substance, further disclosed:

He was overseas approximately twenty-three months and allotments were made to his wife over that period; the allotments began when he was made a major; he became a lieutenant colonel June 13,

1944, and remained so until his discharge; his pay as a major was $462 while he was in the states and $494 while he was overseas; while he was a lieutenant colonel he received $526 a month out of which his wife received $250 a month with the exception of four months; he actually used less than $100 a month for his expenses and sent his wife additional money on several occasions amounting in all to approximately $400; appellant admitted she had withdrawn and spent $11,000 between September, 1945, and the time of trial in February, 1946; $8,000 was spent on trips to Indianapolis, Ind., Albuquerque and Santa Fe, N. M., Kansas City a number of times, and for clothes and gifts for the daughter and her friends; she had also spent the other $3,000 and no portion of the funds remained; appellee had fourteen or fifteen suits of clothes, an overcoat and other accessories when he entered the service; when he returned his wife refused to deliver them voluntarily and he was obliged to obtain a court order for their delivery; only a small portion thereof was found; appellant's versions with respect to the disappearance of appellee's clothing were conflicting but she confessed to the deputy sheriff she had sold them; on one occasion prior to entering the service appellant had thrown a coca cola into his face in the presence of friends in a hotel room; he did not know why she did so and he had difficulty restraining her; and on one occasion appellee went to his room in the hotel to get his coat and hat but his wife refused to let him enter; his wife's mother was there and gave them to him; as he started to leave appellant came out into the hall and employed abusive language and removed his hat; when he bent over to pick it up she kicked him in the face.

Appellant asserts no divorce can be granted without corroborating evidence (G. S. 1935, 60-1509), and contends appellee's evidence was uncorroborated. It is true appellee's testimony pertaining to the abusive language and physical violence was not corroborated. Appellant's parents who had been subpoenaed by appellee did not appear at the trial and were not compelled to testify. Testimony touching her indiscretions with other men were corroborated by a number of witnesses. Appellee called appellant as his own witness. She testified with respect to the disappearance of approximately $11,000 within six months prior to the date of the trial. She stated she had spent all of that money for the purposes previously stated. Appellee's testimony concerning the disappearance of his clothing was likewise corroborated. The deputy sheriff testified appellant

stated, "She had sold the clothes." Touching appellant's attitude toward appellee the witness Banks quoted appellant as having said, ". . . I married Mr. Hayn on the rebound. I never loved him when I married him."

The testimony justified the granting of the divorce to appellee. We need not discuss each detailed fact for the purpose of determining whether it falls precisely within the legal contemplation of gross neglect of duty or extreme cruelty. Some of the facts tend to support both faults. The flagrant waste of property, whether it was the veteran's or jointly acquired, during his absence constituted a gross disregard of appellant's marital duty. (*Overbay v. Overbay,* 147 Kan. 118, 120, 75 P. 2d 234.) But we might completely ignore that evidence and also the evidence of the wholly unjustifiable disposal of appellee's clothing as facts indicating gross neglect of duty and yet be obliged to affirm the decree of divorce.

Evidence of extreme cruelty was amply corroborated. Extreme cruelty as contemplated by the divorce statute is no longer regarded as being limited to acts of physical violence. The modern and better considered cases have repudiated the ancient doctrine requiring physical violence as too low and sensual a view of the marriage relation. It is now generally held, and in this state it has long been the rule, that any unjustifiable and long practiced course of conduct by one spouse towards the other which utterly destroys the legitimate ends and objects of matrimony constitutes extreme cruelty though no physical or personal violence may be inflicted, or threatened. (*Carpenter v. Carpenter,* 30 Kan. 712, 2 Pac. 122; *Stegmeir v. Stegmeir,* 158 Kan. 511, 518, 148 P. 2d 755, and cases therein cited.) Under some circumstances it may not be necessary that such conduct should continue over a long period to constitute extreme cruelty.

Did the trial court err in refusing to award the custody and control of the seven-year-old daughter to appellant and in awarding such custody to appellant's parents? Touching this subject appellee testified:

"That it was impossible for them to live together as husband and wife. That Mr. and Mrs. Sam Murphy had taken care of the child since its birth. That they are the father and mother of Mrs. Hayn. Mrs. Hayn has spent very little time with the baby. That they had a nurse in the hotel with the exception of two or three hours a day."

As previously stated the Murphys, appellant's parents, did not

appear in court although they had been subpoenaed by counsel for appellee. There is evidence in this record with respect to appellant's conduct which clearly indicates it would have been highly embarrassing for the Murphys to appear as witnesses against their own daughter. On the hearing of the motion for a new trial the trial judge stated the grandparents had come to see him. Counsel for appellant stated, "You are putting the obligation upon some grandparents." To that statement the court replied, "I know the grandparents are glad to have it."

Appellant argues, first, there was no evidence in the record to indicate the grandparents were so inclined and, second, that the court should have made an order, at the time of trial, requiring appellee to provide child support. It is true there was no evidence at the trial with respect to the willingness of the Murphys to take and care for their grandchild after the divorce was granted. But after the court concluded it would not presently award the custody to either parent it had not only the right but the duty to place the child as its best interests required. That judgment should not be disturbed unless it clearly appears the court abused its discretion. (*Chapsky v. Wood*, 26 Kan. 650; *Hodson v. Shaw*, 128 Kan. 787, 280 Pac. 761.) The trial court knew from evidence in the record the maternal grandparents had been caring for this child most of the time since its birth. The trial court also may have known the grandparents to be interested, financially able and trustworthy people. In fact, there is evidence tending to show they were. In view of evidence in the record we cannot say the trial court abused sound judicial discretion in awarding the custody and control of the child to the maternal grandparents.

Under the circumstances the trial court refused to make an order requiring appellee to support the child until he could find employment. The court expressly ruled it was retaining jurisdiction for that purpose and, upon proper showing, would make such order, if requested. Appellant directs attention to G. S. 1935, 60-1510, which provides,

"When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper."

and asserts the court was obliged to make an order for child support when the divorce was granted. The court did make an order

at that time for the custody and control of the child and the grandparents are not here complaining concerning it. The court's jurisdiction over minor children, including orders for their support, is a continuing jurisdiction. Its orders may, and should be, changed from time to time as conditions require. (See cases collected under statute last quoted.) The record discloses counsel for appellee informed the court that at any time Mr. Murphy needed money for the child's support it would be forthcoming. Limiting our review to the evidence adduced at the trial we find no reversible error in this part of the judgment.

Appellant finally argues the court made no finding she was not a fit and proper person to have the care, custody and control of the child and therefore its judgment cannot stand. While no finding was made in those precise words the court clearly indicated it entertained that view when, on the hearing of the motion for a new trial, it definitely stated, ". '. . the matters in evidence before me made it plain to me that it was not to the best interests of the child to be continued in her care and custody." The form of the finding of fact constitutes a courtesy to appellant for which she may be grateful some day. But whether she will be or not her parents and her innocent child probably will be.

Appellant argues the court failed to make a fair and equitable division of the property as required by G. S. 1945 Supp. 60-1511. The divorce was granted to the husband by reason of the wife's fault. At the time of trial appellant had no property of her own other than clothing, including four fur coats and some other personal articles. That was more than had been left to appellee. When he returned from the service he was even stripped of his civilian clothes. Under the facts it was not error to award the automobile and a few distinctly personal articles, not in dispute, to appellee. Appellant testified the entire $11,000 was gone. Whether it actually belonged to her, as she claimed, or whether it constituted jointly acquired property had become immaterial for the purpose of dividing it. The court could not divide something which, according to appellant's own evidence, did not exist. Nor, if it did exist, could the court divide it unless it could be reached.

Appellee owned three life insurance policies. With respect to them the judgment provided:

"That the insurance policies in the Massachusetts Mutual Life Insurance Company for $15,000, the Equitable Life Assurance Society of $2,000 and

Provident Mutual Life Insurance Company of $2,000 be irrevocably assigned to S. A. Murphy, the beneficiary be named as Saundra Sue Hayn, and that the plaintiff be required to pay all premiums due thereon so that in the event of the death of Henry J. Hayn all proceeds of said policies shall inure to the benefit of Saundra Sue Hayn."

Appellee's mother was the beneficiary under the second above mentioned policy. Appellant does not complain with respect to the disposition of that policy.

We are told the other two policies had a total cash surrender value of $4,009.10 and, therefore, appellee had property which could be divided. Under the provisions of the statute relied upon by appellant it rested in the sound discretion of the court whether it would award to the wife any part thereof when the divorce was granted to the husband by reason of the wife's fault. (G. S. 1945 Supp. 60-1511.) Under the peculiar circumstances of this case we are not willing to say the court abused sound judicial discretion in refusing to grant appellant a portion of the cash surrender value of the policies. It must be remembered the trial court was not obliged to believe appellant's testimony that she had spent all of the $11,000 in the six months preceding the trial even though it was not directly contradicted. (*Johnson v. Soden,* 152 Kan. 284, 287, 103 P. 2d 812.) Remarks made by the trial court tended to indicate he may have doubted that she had done so. He also stated if the money could be located he would make prompt division thereof.

Appellant argues the assignment of the policies created an estate for the minor child out of the father's property and thus provided support for the child which might continue beyond the minority of the child. It is contended the creation of such an estate is invalid, citing *Emery v. Emery,* 104 Kan. 679, 180 Pac. 451. That decision, when applicable, is sound. Here, however, an estate for the child is not created out of the father's property against his will. The father has consented to the irrevocable assignment of the policies and has agreed to continue to pay the premiums thereon for the benefit and protection of his child.

Appellant also contends she was entitled to a judgment for permanent alimony. The contention is not good. With respect to alimony, this court in *Petty v. Petty,* 147 Kan. 342, 76 P. 2d 850, said,

"After granting the husband a divorce, because of the fault of the wife, the court gave the wife judgment for alimony against the husband for $900.

Counsel for appellant points out that the court had no authority to do· that under our statute (G. S. 1935, 60-1511). The point is well taken. In *Hendricks v. Hendricks*, 136 Kan. 69, 12 P. 2d 804, where a similar decree and judgment were rendered, it was held:

" 'Where a divorce is granted by reason of the fault or aggression of the wife, the court does not have the power to require the husband to pay permanent alimony'." (p. 349.)

To the same effect is *Hoffman v. Hoffman*, 156 Kan. 647, 133 P. 2d 887.

One other subject requires attention. The trial court refused to allow attorneys' fees to appellant. She contends the refusal constitutes reversible error. Appellant also seeks allowance of such fees for services in this court. The statute provides the trial court *may* make such order as will insure to the wife an efficient preparation of her case. (G. S. 1935, 60-1507.) Appellant, therefore, was not entitled to an allowance of attorneys' fees as a matter of right irrespective of circumstances. The question of such an allowance rests in the exercise of the trial court's sound discretion, and we have so held where such fees were denied. (*Perkins v. Perkins*, 154 Kan. 73, 78, 114 P. 2d 804.) The trial court probably believed appellant had funds with which to pay her attorneys. Under the circumstances in this case we are not inclined to allow a fee here.

We have carefully reviewed cases cited by counsel for appellant touching the various alleged errors. In our opinion they do not require a reversal of the judgment. In the final analysis every case must be decided upon its own particular facts. On review, insofar as the facts are concerned, we determine only whether there is substantial competent evidence to support the findings made and not whether there is contrary evidence.

The judgment is affirmed.