No. 36,976

John Willis Carpenter, *Appellee*, v. Eleanor Joanna Car-
penter, *Appellant*.

(193 P. 2d 196)

Opinion
filed May 8, 1948.

*Guy Lamer,* of Iola, argued the cause, and *W. H. Von Der Heiden* and
*Cliff A. Morgan,* both of Newton, were with him on the briefs for the appel-
lant.

*Frederick G. Apt,* of Iola, argued the cause, and *Mitchell H. Bushey* and
*Howard M. Immel,* both of Iola, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This case was commenced on the 29th day of Jan-
uary, 1946, by a husband against his wife for a divorce on the
ground of gross neglect of duty only and the custody of their infant
child. The wife answered denying the charge and in a cross petition
charged the husband with abandonment, extreme cruelty and gross
neglect of duty. In such cross petition the wife did not seek a
divorce but merely prayed that the action be dismissed, that she
be given custody of the child and that plaintiff be required to con-
tribute a reasonable amount for its support. Plaintiff's answer to
the cross petition was a general denial of all allegations contradict-
ing factual statements set forth in his petition and in his supple-
mental petition presently mentioned.

Issues having been joined on claims of the parties with respect
to divorce and custody, as just related, the case was tried by the
court. After plaintiff had adduced his evidence he sought and ob-

tained leave to amend his petition and file a supplemental petition to conform to the evidence. This supplemental pleading, filed on March 14, 1947, charged the defendant had been guilty of extreme cruelty and gross neglect of duty toward plaintiff in that she had failed and neglected to live with him for more than one year prior to its date of filing and still refused to do so and that by reason of such action on her part his health had been injured and impaired. Defendant then demurred to plaintiff's evidence. When this demurrer was overruled she offered evidence in her own behalf and rested her cause. Ultimately the trial court found the plaintiff had sustained his charges of gross neglect of duty and extreme cruelty and held that by reason thereof he should be granted a divorce. Judgment was rendered accordingly. In addition such decree, without any allowance for child support, awarded joint custody of the child to each of the parties. Thereupon defendant perfected this appeal.

Stripped of matters incidentally material but not decisive of its decision we are convinced from oral argument of the cause and an examination of the entire record that the vital and all important question involved in this case is whether appellee's evidence established grounds for divorce or upholds the judgment. Hence our brief and summarized statement respecting pleadings and proceedings had in the court below, devoid of all reference to all matters we regard as nonessential to its determination.

Decision of the question to which we have just referred requires, of course, a careful survey of all evidence adduced by appellee and its analysis under the well-established rule that it is to be viewed in the light most favorable to his cause.

Before relation of the facts actually responsible for this lawsuit we believe a preliminary statement with respect to the situation of the parties prior to their occurrence will be of value. When the original petition was filed on January 9, 1946, appellee was 30 years of age and appellant 27. Prior to 1945 appellee was a soldier in the Army Air Forces of the United States and appellant was an employee of the Santa Fe railroad at Newton. They became very much interested in each other and were married at the Roswell, N. Mex., Army Air Field, where appellee was located, early in 1945. Since both realized that the army post was not an ideal place for a soldier's wife it was agreed that appellant should, and she did, return to her work at Newton shortly after the marriage. Some time

thereafter it was ascertained that she was pregnant. When so advised appellee set about to obtain a discharge from the army. He was successful and received an honorable discharge on the 9th day of November, 1945. He came at once to his wife. On November 14, 1945, appellant gave birth to a baby boy at a hospital in Wichita. There it was determined she and the baby should return to Newton and live with her parents temporarily. Appellee was to secure a place to live and establish a home for his wife and baby as soon as possible and they were to come to the home when she was able. For a time appellee frequently visited appellant at her parents' home. Eventually he advised her he was ready to establish their home and they discussed when she would come to live with him.

It will likewise be of value, and obviate further reference thereto throughout the course of this opinion, to state that in this action, the moral conduct, reputation and character of the parties is conceded to be above reproach. Since we are at the moment giving consideration to the sufficiency of appellee's evidence it can and should also be said there is nothing in the record to indicate that the conduct, on which he bases his right to divorce at the time he filed his petition, was intentionally calculated by his wife to cause him mental anguish or physical pain or result, as a matter of law, in extreme cruelty as such term is defined in our decisions. In fact, during the course of his testimony as a witness in his own behalf appellee stated, not once but several times, that the only complaint he ever had against his wife prior to bringing his suit for divorce was that she would not leave her parents' home at Newton and come with him.

Having thus ascertained the gist of appellee's complaint from his own testimony we now proceed to relate the substance of the material facts disclosed by the record with respect thereto.

Discussion between the parties as to where they should live did not result in agreement. Ultimately appellant told appellee she could not come and live with him and that she wanted to live six months apart. Following this statement they went together to the home of a minister in Newton and discussed the situation with him. Appellee admits that during that conference they decided to live six months apart so that appellant could determine how she might then feel toward appellee and, although he did so reluctantly, he agreed they would live separate for such period of time. The exact

date or dates of the statement and conference above mentioned are not found in appellee's evidence and we are required to speculate as to when they occurred. However, since the baby was born on November 14, 1945, and this suit was filed on January 29, 1946, it can be definitely ascertained such statement was made and such conference occurred within two months and fifteen days from the date of the birth of the child. Thus it affirmatively appears that when appellee commenced the case at bar he relied on failure of his wife to come and live with him for a period of time not exceeding two months and fifteen days, coupled with her announced refusal to do so for six months, as constituting gross neglect of duty, and that he brought such action in violation of his conceded agreement she was to have and he was to give her six months time in which to decide whether she would do so thereafter.

We make no attempt to detail appellee's evidence relating to the conduct of the parties after institution of the divorce action. It suffices to say it reveals he professed great affection for his wife and on numerous occasions endeavored to induce her to live with him but she refused to do so. There is also sufficient evidence to support his claim that appellant's conduct in that respect, both before and after the action was commenced, caused him to become nervous, suffer indigestion and interfered with his work.

With evidence as heretofore related can it be held that appellee established either gross neglect of duty or extreme cruelty as those terms are defined in our decisions?

At the outset it can be said that, except as it might be considered as a charge of extreme cruelty existing on the date of the filing of the action, we do not regard the allegations of appellee's supplemental petition as having the effect of enlarging the issues theretofore presented to the trial court for decision. This court is not committed to and refuses to approve any doctrine which will permit a spouse, bringing a divorce action on grounds of gross neglect of duty or extreme cruelty based entirely upon charges of failure of the other to live with him, to supplement his grounds for divorce by charges or proof that the spouse sued has failed and refused to cohabit with him since the institution of and while the action remained pending and undetermined. Directly applied to the instant case what has just been stated simply means that failure and refusal of the appellant to live with appellee during the pendency of his suit against her is not an element to be considered in determining

whether his evidence established grounds for divorce. The result is appellee was required to affirmatively establish that gross neglect of duty or extreme cruelty as charged in his petition and in his supplemental petition existed on the date of the institution of his suit. Otherwise his evidence failed to prove a cause of action against the appellant.

It must be conceded that the terms "gross neglect of duty" and "extreme cruelty" as found in our divorce statute (G. S. 1935, 60-1501), are both somewhat indefinite and that whether either exists as a ground for divorce must depend upon the facts of each particular case, subject, of course, to general definitions of such terms as laid down by our decisions.

One of the better and more recent definitions of extreme cruelty is to be found in *Hayn v. Hayn*, 162 Kan. 189, 175 P. 2d 127, where it was held:

"Extreme cruelty as contemplated by our divorce statute is not limited to 'acts of physical violence. Any unjustifiable and long practiced course of conduct by one spouse towards the other which utterly destroys the legitimate ends and objects of matrimony constitutes extreme cruelty though no physical or personal violence may be inflicted, or threatened." (Syl. ¶ 1).

See, also, *Stegmeir v. Stegmeir*, 158 Kan. 511, 148 P. 2d 755; *Carpenter v. Carpenter*, 30 Kan. 712, 2 Pac. 122.

High lighting the evidence this is a case where the husband's sole complaint is that the wife would not come to live with him; that her refusal to do so came within two months and fifteen days after she had gone through the harrowing experience of giving birth to her first child; that even then such refusal was qualified to the extent she wanted six months in which to make up her mind as to whether she would live with him; that the husband agreed she could have that period of time to make up her mind but notwithstanding sued her for divorce two months and fifteen days after the date of the birth of the baby. In such a situation, and under all the circumstances disclosed by the record, we have little difficulty in concluding appellee's evidence failed to show extreme cruelty within the meaning of that term as used in the statute and defined in the foregoing authorities. This even though there was evidence appellee's marital difficulties caused him to become nervous, suffer indigestion and interfered with his work. Conceding, as indicated in *Carpenter v. Carpenter*, supra; *Rowe v. Rowe*, 84 Kan. 696, 115 Pac. 553, conduct of one spouse seriously impairing the health or en-

dangering the life of the other may constitute extreme cruelty under certain conditions, we do not believe appellee's evidence on the point in question established a condition contemplated by or brought him within the rule announced in such decisions.

We next consider whether the evidence established gross neglect of duty. As we do so it must be remembered that one of the grounds for divorce under our statute is (G. S. 1935, 60-1501, *second*) abandonment for one year, and kept in mind that if mere failure on the part of one spouse to live with the other for a period of less than one year constitutes gross neglect of duty, the abandonment ground for divorce must be regarded as almost meaningless, or at least of little importance. Long ago in *Smith v. Smith,* 22 Kan. 699, this court said:

"Upon these facts, did the court err in finding there had been no gross neglect of duty within the scope of the divorce act? We think not. The expression, 'gross neglect of duty,' is indefinite, and it is difficult to lay down any general rule by which every case can be determined to be within or without its limits. Each case must be examined by itself. And yet an examination of the whole body of the divorce act will suggest certain things as to the legislative intent in this expression. And first, it is not mere neglect of marital duty. The adjective 'gross,' whatever may be said of it as a mere term of vituperation in other relations, here has legal force as descriptive of the conduct of the party neglecting duty. If it were not so, and any mere neglect of duty were ground for divorce, the aid of the courts might as well be abandoned, and voluntary separation permitted. *There must not only be a default, but the default must be attended with circumstances of indignity or aggravation.* . . . An abandonment for one month or ten, although it involves a total neglect of all marital duty, is not gross neglect of duty within the statute. Something more than mere neglect, although it is a neglect of all duty, is requisite. If neglect alone is shown, it must be a total neglect, and continue for a year." (Emphasis supplied.) (p. 700.)

The rule in *Smith v. Smith,* supra, has been repeatedly quoted, followed and approved, in our decisions (*Wespe v. Wespe,* 114 Kan. 21, 216 Pac. 814; *Zeiler v. Zeiler,* 158 Kan. 200, 202, 146 P. 2d 649) and is the prevailing law of this state. The record in this case is wholly devoid of anything indicating appellant's conduct was accompanied by indignity and aggravation, was intentionally calculated to wound appellee's feelings or destroy his piece of mind, or was attended by any other circumstances which might be regarded as gross neglect of duty within the meaning of that term as used in the statute. Therefore appellee's evidence wholly failed to establish gross neglect of duty.

Based upon what has been heretofore stated and announced we hold the trial court erred in refusing to sustain the demurrer to appellee's evidence and that its judgment cannot stand.

It should be added that our conclusion has not been reached without careful consideration of the four cases cited by appellee and construed by him as requiring a decision that his evidence established a case of gross neglect of duty and extreme cruelty. We are unable to give such decisions the weight he places upon them. In *Stegmeir v. Stegmeir,* supra, the plaintiff's evidence disclosed repeated acts of physical violence practiced upon him by his wife and he was granted a divorce upon grounds of extreme cruelty because of such acts. In *Rolland v. Rolland,* 148 Kan. 851, 85 P. 2d 21, a finding of extreme cruelty was based upon continuous fault-finding, cursing, threats and wrongful insinuation of questionable relations. Gross neglect of duty in *Petty v. Petty,* 147 Kan. 342, 76 P. 2d 850, was based upon a long continued course of conduct on the part of the wife wherein there was a constant feeling of estrangement, repeated and almost continuous bickering and disagreements between the parties over relatively trivial things when they were alone and a full realization on the part of both that their marriage had failed. In addition the wife's conduct in that case was of such character that the court denominated it gross misconduct. A divorce was granted the husband in *Carpenter v. Carpenter,* supra, on the ground of extreme cruelty because his wife had written letters to other persons charging him with criminal intimacy. None of the elements pointed out as existing in the foregoing cases are involved in the case at bar.

The judgment is reversed and the cause remanded with instructions to sustain the demurrer to plaintiff's evidence and render judgment for the defendant.