No. 28,535.

RUTH NEWTON, *Appellant*, v. IKE NEWTON, *Appellee*.

(274 Pac. 247.)

Opinion filed February 9, 1929.

*W. L. Huggins* and *O. T. Atherton*, both of Emporia, for the appellant.

*O. S. Samuel, W. C. Harris, W. L. Harris* and *G. H. Frith*, all of Emporia, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for divorce, plaintiff charging that the defendant was guilty of extreme cruelty, gross neglect of duty, habitual drunkenness and adultery. When the case was called for trial the defendant withdrew his answer and stated that he would contest only the plaintiff's claim for alimony. Trial was had and a decree of divorce and alimony awarded plaintiff. The plaintiff appeals from the allowance of alimony, contending chiefly that the court erred in refusing to hear additional evidence showing the defendant's aggressions. Also, that the court abused its discretion in its failure to make a larger allowance of alimony. It would serve no useful purpose to set out and analyze the evidence. (*State v. Rose*, 124 Kan. 37, 257 Pac. 731, and citations.) The plaintiff

states in her brief that it supports the allegations of the petition as to habitual drunkenness, adultery, gross neglect of duty and extreme cruelty. Giving consideration thereto the trial court stated, among other things:

"The evidence in this case, as examined and tested by the court, shows that these parties began life together without anything except, as Mr. Atherton for the plaintiff has said, good wholesome minds, willing hands and business ability. They were both working and for rather small salaries. They continued to work for some three or four years for about the same salaries they began with. During that time this plaintiff earned and contributed to the income of these parties a sum of money amounting, in round numbers, to $2,400. During the same time the defendant pursued the same line of work in which he was engaged at the time these parties were married, his earning capacity remaining about the same. After they had, as you might say, become settled in their business outlook, the father of the defendant saw fit to give him a better opportunity for his future, and gave him, instead of a salary, one-fourth of the income of the business, known as Newton Brothers (automobile business) here in Emporia. . . .

"If I am not mistaken, I have covered all the property, making in round numbers $60,000. As against this there is some $7,000 that defendant says he owes in an outstanding indebtedness. Mrs. Newton now has $1,500. She has the household furniture and a musical instrument, . . . worth about a thousand dollars. . . .

"In arriving at the present financial worth of the defendant the court has not made any allowance for shrinkage on the used car account, amounting to $20,000, as it appears from the evidence. Neither has the court made any allowance for shrinkage on bills receivable, amounting to $46,842 or a total of $66,842, and concerning which the defendant will suffer a one-fourth loss. I do not think, however, that I can entirely overlook that contingency in determining on a division of their property. . . .

"Mr. Huggins: In making whatever allowance you are making, does your honor take into consideration this man's earning power and his income, as shown by the evidence, in addition to the present worth of his property?

"The Court: I am obliged to take that into account; otherwise the amount I am going to allow and charge against him as alimony would cripple him. That is to say, if his earning capacity simply made a living for him, to take out of it the amount I am going to allow would wreck the business, if he didn't have the earning capacity to take care of this outlay. . . .

"I am going to allow the plaintiff . . . permanent alimony of $15,000. This is considerably more than one-fourth of all the defendant is worth, leaving the hazards of the business to him. The order will be that $5,000 of this is to be paid in cash, $5,000 to be paid September 1, 1928, and the remaining $5,000 on January 1, 1929. Fifty dollars per month for support money must be paid to plaintiff until the last dollar of this alimony is paid. The amount allowed the plaintiff will be a lien upon the property of the defendant until

the matter is fully discharged. The defendant will pay the costs of this action, and an additional fee of $200 for plaintiff's attorneys."

On the question of the excluded evidence it appears that such evidence was not offered by plaintiff on hearing of the motion for new trial. It may be again observed, as it has heretofore many times been repeated, that "error cannot be predicated upon the exclusion of evidence when such evidence is not brought into the record in conformity with the code." (R. S. 60-3004.) (*State v. Vandruff,* 125 Kan. 496, 264 Pac. 1060; *State v. Snyder,* 127 Kan. 7, 272 Pac. 169; *Sanford v. Chicago, B. & Q. Rld. Co.,* 127 Kan. 83, 272 Pac. 151.)

On the question of the allowance of alimony to the wife, the statute provides that she "shall be allowed such alimony as the court shall think reasonable, having due regard to the property which came to him by marriage and the value of his real and personal estate at the time of said divorce." (R. S. 60-1511.) The determination of the amount of alimony is controlled by no fixed standard.

It has been repeatedly said that the trial court has wide discretion in allowing alimony and that its exercise of that discretion, unless clearly abused, will not be disturbed on appeal. (*Leach v. Leach,* 46 Kan. 724, 27 Pac. 131; *Johnson v. Johnson,* 66 Kan. 546, 72 Pac. 267; *State v. Foren,* 78 Kan. 654, 97 Pac. 791; *Miller v. Miller,* 97 Kan. 704, 156 Pac. 695; *Danielson v. Danielson,* 99 Kan. 222, 161 Pac. 623; *Miller v. Miller,* 113 Kan. 22, 213 Pac. 634; *Currie v. Currie,* 114 Kan. 37, 216 Pac. 1083.)

In the instant case we are unable to say that the trial court abused such discretion.

Other questions argued in the briefs require no discussion. We find no error.

The judgment is affirmed.