No. 31,056.

Ethel Besse, *Appellant*, v. A. Besse, *Appellee*.

(20 P. 2d 539.)

Opinion filed April 8, 1933.

*P. E. Nulton, George L. Stevenson,* both of Pittsburg, and *Douglas Hudson,* of Fort Scott, for the appellant.

*C. O. Pingry* and *Carl Pingry,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This is an appeal from a judgment in a divorce case touching the division of property, the award of alimony, and the insufficiency of the security to insure its payment.

Briefly, the facts were these: For many years past and until the current economic depression the defendant has been a successful business man in southeastern Kansas. His home has been in Pittsburg, and he has accumulated mineral lands in Kansas, Missouri and Oklahoma, and expensive machinery for their exploitation. He has had considerable holdings in hotel and theater property and a large amount of miscellaneous real estate. As a husband defendant has twice proved himself to be a failure. He was divorced from one wife in 1907. The same year he married plaintiff. She put up with his lack of domesticity until she reared and educated their two children. Then she brought this action for a divorce. Judgment was entered in her favor, and the divorce decree is not complained of by either party. In this judgment the trial court made a division

of property, and gave plaintiff an award of $15,000 in alimony, payable at the rate of $200 per month.

The evidence tended to show that defendant was worth $25,000 when he married plaintiff, and that they accumulated a vast amount of miscellaneous property during the ensuing twenty-five years of their married life. At one time defendant's income amounted to $6,000 per month from dividends, rents and profits on his various business activities. The evidence did tend to show, however, that this property has greatly shrunk in value, and that defendant's income has greatly declined in the last two or three years. There was evidence—which the trial court may have disbelieved—that defendant permitted 490 shares of lucrative stock which he held in an amusement company to be forfeited to his son by his first wife for a fraction of its value in a simulated foreclosure to satisfy a pretended debt of defendant to that son. Other incidents tended to show, but perhaps not conclusively, that defendant has so handled his business affairs in recent years as to frustrate any judgment for alimony which plaintiff might secure against him. There was testimony that he declared to plaintiff he would see that she would not get any of this property; that if she sued him for a divorce he would go to France for the rest of his days.

The trial court found that at the time of the trial the value of the property of the litigants, standing mostly in defendant's name, was $272,967.10; that it was encumbered with liens which, with other outstanding indebtedness of defendant, amounted to $211,003.33, leaving a net worth of $61,963.77; that defendant's income from this property was $2,193.25 per month, and that the fixed expense thereon for interest, taxes and maintenance was $2,395.58 per month, or $292.33 per month in excess of his average monthly income therefrom. The findings of fact include a lengthy schedule of properties in Kansas, Missouri and Oklahoma, with their encumbrance, monthly income, and current and overdue taxes; and also a list of defendant's miscellaneous liabilities. Of these properties the court made a division in plaintiff's behalf as follows:

"That the plaintiff, as her part of a division of the property of the parties and as and for permanent alimony, is entitled to money and property of the approximate net value of $36,000."

Included in this division in favor of plaintiff was the family homestead, which stood in her name and consisted of a thirteen-room house and one and one-half town lots in Pittsburg, valued at

$12,000; a $7,000 house, encumbered with a mounting unpaid tax lien of $794.62, which rented for $50 per month; an $800 house encumbered with unpaid taxes of $500, of no rental value; another $800 house with $247.21 unpaid taxes, which rents for $12.50; and a quarter section of land partly destroyed by strip mining and valued at $1,200, with a tax encumbrance of $101.14, of no present rental value. The court's estimate of the value of all these properties set apart to plaintiff was $20,972.03. The court directed defendant to pay accounts contracted by plaintiff amounting to $167.01, and assigned to her the household furniture and fixtures in the family residence and a Hudson automobile now in her possession. The decree further provided:

"In addition to the real property hereby awarded to the said plaintiff the court hereby awards said plaintiff as permanent alimony the sum of $15,000, the same to be a judgment against the said defendant and to be paid by said defendant at the rate of $200 per month, without interest, except that past due payments shall bear interest at the rate of eight (8) per cent per annum. The first payment shall be due on August 15, 1932, and the subsequent payments shall be and become due on the 15th day of each succeeding month thereafter until the full amount is paid, and the said defendant shall have the right at any time to pay the full amount hereby awarded and/or any balance thereon. The said $15,000 shall be a lien on all of the real property of said defendant *and the failure of the defendant to pay any installment within ten (10) days after the same becomes due and payable shall make the entire balance of the said sum of money due and payable and the lien hereby created subject to foreclosure.*" [Italics ours.]

The trial court overruled plaintiff's motion for a new trial based on various grounds, including the following:

"Because the court, in his [its] decision, ignored the earning power of the defendant of three hundred fifty ($350) dollars per month, which he receives and has received for many years as an officer of the Pittsburg Amusement Company."

Defendant filed a motion to modify the judgment, which motion, in part, was sustained, and pursuant thereto the court eliminated from its judgment the matter we have italicized above.

Plaintiff's first grievance is that the real properties which the court valued at $20,972.03 and set aside to her "are of no consequence." Her counsel contend that she will not be able to pay the taxes and maintain the large family residence set aside to her; and the other properties will not yield sufficient income to meet their own burdens of taxes and maintenance. Under present economic conditions it may be a matter of fair debate whether any real property,

other than a house suitable and necessary for residential purposes, is of any "consequence;" but in this matter, as in most others where the trial court has to weigh the evidence and reach a conclusion, it is difficult for an appellate court to discover where such conclusion is erroneous. And the precedents of this court are many, indeed insurmountable, that in the division of property between husband and wife in a divorce case only a plain case of abuse of discretion will justify this court in disturbing that division. (*Newton v. Newton*, 127 Kan. 624, 274 Pac. 247.) In *Danielson v. Danielson*, 99 Kan. 222, 226, 161 Pac. 623, where the error complained of was the unfairness of the division of property between a discordant couple, it was said:

"The question here is not simply whether or not the district court was too liberal in its allowance to the defendant, but whether or not the division was so manifestly inequitable and unjust that this court should interfere." (p. 226.)

In *Rasmussen v. Rasmussen*, 124 Kan. 461, 260 Pac. 576, it was said:

"Under hackneyed rules of appellate review it is only where the trial court manifestly abuses its discretion that its award of alimony in divorce proceedings can be disturbed." (p. 462.)

A careful study of the record and of plaintiff's brief does not convince us that in the division of property between these litigants the trial court abused its discretion, consequently that division will have to stand.

It is also contended that the trial court ignored the large monthly salary or dividend defendant was receiving as an officer or stockholder of a thriving amusement company. That fact does not conclusively appear. Mayhap but for that large monthly income the fact that there was a deficit of $293.33 in the rental income of the real-estate properties set apart to defendant would have constrained the trial court to make a much less generous award of alimony to plaintiff than it did make. And whatever plausible talking point can be made against the *bona fides* of the foreclosure of the son's lien on some of defendant's stock in the amusement company, it would not justify this court in disturbing the judgment.

Plaintiff, however, does appear to have a better ground of complaint in respect to the provision made for the payment of the alimony decreed to her. It was largely upon the credence which the trial court gave to defendant's evidence that the division of property

and award of alimony were made, and which this court is constrained to leave undisturbed. But by that same evidence it appears that defendant is not paying the fixed charges on the properties set apart to him, but is collecting the income and leaving the interest and taxes unpaid. In this manner he is rapidly building up liquid assets for himself; but it is quite apparent that his failure to pay interest and taxes on his encumbered properties may soon precipitate foreclosure and eventually extinguish all his rights therein. Considering the significance of such a policy, together with the fact that it will take six years and three months to pay the alimony at the rate of $200 per month, plaintiff's prospects of continuing to realize on that award until it is paid in full six years hence is not reassuring. We think the court erred in not making whatever provision is practicable under the circumstances to insure prompt payment of the installments of alimony. And in view of defendant's policy of collecting all the income he can out of his properties and paying as little as he can of the fixed charges thereon, it seems imperative that the payments of alimony must be greatly accelerated to avert eventual frustration of the court's decree. These payments should be increased to $400 per month, and default in payment of any monthly installment for ten days after it becomes due should mature the entire sum. To effectuate this, the cause will be remanded to the district court to modify its judgment in the following particulars: The monthly payments of the $15,000 award of alimony shall be $400 per month, payable on the fifteenth of each month, until the total amount is paid in full; and the $15,000 award shall be a lien on the gross income of all the real property separately decreed to the defendant, and his failure to pay any monthly installment of $400 within ten days after it becomes due shall make the entire sum due and payable and subject the lien given by this judgment to foreclosure.

It is so ordered.