No. 36,101

FRED S. STEGMEIR, *Appellee,* v. OLIVE E. S. STEGMEIR, *Appellant.*

(148 P. 2d 755)

Opinion filed May 6, 1944.

*George Francis Burton* and *C. E. Pile,* both of Parsons, argued the cause for the appellant.

*A. L. Foster,* of Parsons, argued the cause for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment wherein the plaintiff husband was granted a divorce from his defendant wife. She was given the custody of their sixteen-year-old son. Each was given the equivalent of the value of the property they had brought into their marital union, and their joint accumulation of additional property was equally divided between them; but the portion thus allotted to the husband was set over to the wife for the support and maintenance of their son.

The defendant wife appeals, with a lengthy specification of errors, to an understanding of which some matters in evidence gleaned from the record may be helpful.

It appears that on October 19, 1921, Fred S. Stegmeir of Angola, Labette county, a bachelor, forty-three years of age and Olive E. Stuart, a spinster, thirty-six years of age, also of Labette county, were married. At that time he had about $6,500 and some town lots in the city of Parsons. She had about $275 and a half interest in a quarter-section farm she inherited from her father. Her mother owned the other half of the farm. The farm was equipped except in work horses. The couple took up their abode with the wife's mother. Stegmeir bought three horses, and thereafter he and his wife operated the farm. The wife's mother died in February, 1923, by which event the wife became the owner of the entire farm.

From the inception of the marriage until it ran completely aground some twenty years later the wife handled the finances of the family. She banked the proceeds of crop sales in her own name and drew all checks thereon. Just how all or most of Stegmeir's original funds became merged in the bank account kept in Mrs. Stegmeir's name, or were otherwise disposed of, is not clear, owing in part, perhaps, to a fire which destroyed some of the bank's records. Stegmeir sold some of his Parsons city property for $500 in cash.

As time went on, plaintiff and defendant purchased a quarter-section of land adjoining them on the south. Some years later they acquired another quarter-section a few miles north of their farm residence.

On March 26, 1943, Stegmeir filed this action for a divorce, charging the defendant with extreme cruelty. He also prayed for division of property rights.

Defendant filed an answer and cross petition. Both petition and answer and cross petition were subjected to motions to strike for nonconformity with G. S. 1935, 60-1519. Both motions were sustained and both parties amended their pleadings and supplied bills of particulars, and upon these the trial proceeded. The evidence took a wide range. The trial court made extended findings of fact and gave judgment for plaintiff as summarized above.

The first error urged relates to the striking of defendant's original answer and cross petition from the files. But that point is of no consequence since defendant acquiesced in the court's ruling by filing an amended answer and bill of particulars. (*Sanford v. Weeks*, 39 Kan. 649, 18 Pac. 823; *Winfrey v. Clapp*, 86 Kan. 887, 122 Pac. 1055; *Hamill v. Hamill*, 134 Kan. 715, 717, 8 P. 2d 311.) However, the propriety of the trial court's ruling is worthy of note, for the reason that it concerns the construction of G. S. 1935, 60-1519, which is a new statute drafted and sponsored by the Judicial Council, and which has not hitherto required the attention of this court. The statute reads:

"That in all actions for divorce, or for alimony, or for both divorce and alimony, the petition or cross petition shall allege the causes relied upon as nearly as possible in the language of the statute (R. S. 60-1501), and without detailed statement of facts. If the opposing party desires a statement of facts relied upon the same shall be furnished to him by the petitioner or cross-petitioner in a bill of particulars. A copy of this bill of particulars shall be furnished to the court and shall constitute the specific facts upon which the action is tried. The statements therein shall be regarded as being denied by

the adverse party, except as they may be admitted. The bill of particulars shall not be filed with the clerk of the district court, nor become a part of the records of such court, but if the action be appealed, and the question sought to be reviewed relate to the facts set forth in the bill of particulars, it shall be embodied in the abstract for the supreme court."

Commenting on the enactment of this statute, the *Judicial Council Bulletin, Part 1, Ninth Annual Report,* April, 1935, at page 5, says:

"Early in our work we recognized the advisability in an action for divorce or for alimony that a statute should require the cause of action to be stated in the language of the statute only. We mentioned this in our 1928 report, page 14, and a draft of the bill was set out in our 1929 report, page 23. It has been presented to each regular session of the legislature since that time. On two occasions it passed the house of representatives but failed to receive final favorable action in the senate. Its purpose is to avoid having scandalous matter relating to a party to the action appear upon the permanent record or in the files of the court, unless that should be actually necessary. This is especially important when there are minor children of the marriage. Sometimes such charges were made or threatened when there was little or no foundation for them, with a purpose of forcing a settlement or compromise. This provokes notoriety, to the shame or disgrace of one or both of the parties to the action, or to their children. It is seldom necessary to make such charges even if good grounds for them exist. This year the bill was introduced by the house judiciary committee, H. B. No. 97, and passed both houses without difficulty. It becomes effective when published in the statute book."

It will thus be seen that in the case at bar the trial court quite properly ordered stricken whatever pleadings filed by either party did not conform to the intent and purpose of the statute governing pleadings in divorce cases.

Error is next urged on the overruling of defendant's objection to the introduction of evidence on plaintiff's bill of particulars. We think plaintiff's pleadings were quite sufficient to state a cause of action for divorce on the ground of extreme cruelty. Defendant and her counsel were never at a loss to discern the issue tendered by plaintiff's pleadings, and nothing transpired in the course of the trial to indicate they were misled thereby.

Error is next assigned on the exclusion of certain exhibits A and B, which were copies of entries from certain records of a Coffeyville bank in which at one time and another both plaintiff and defendant had deposit accounts. The exhibits were offered in evidence by defendant, as tending to prove that the additional lands purchased were made with funds belonging to herself. A scrutiny of the rejected exhibits, as they appear in defendant's abstract, do not shed any light on that point. Moreover, the bank officer who compiled

the exhibits from the bank's records testified that they were not complete, although they did go far enough to contradict defendant's claim that she bought one of the purchased quarter-sections with her own separately acquired money. That particular quarter section was purchased on October 6, 1924, and the same bank officer who prepared the exhibits was permitted to use them to refresh his personal knowledge, and he testified that defendant had entirely closed her time deposit account on June 2, 1924, more than four months before the land was purchased. Furthermore, defendant introduced in evidence as her exhibit F, for what purpose is not now clear, but it did tend to show that as late as October 18, 1924, only $200 had been paid as earnest money on the purchase price, and that there was then owing and unpaid the sum of $2,880. We fail to discover any semblance of error under this specification.

Defendant's fourth specification of error relates to some twelve of the twenty-seven special findings of fact made by the trial court, and upon which the court based its conclusions of law and its final judgment. The special findings excepted to were 3, 4, 5, 6, 16, 17, 18, 22, 23, 24, 26 and 27.

Checking these numbered special findings, we note that No. 3 is a finding that defendant had been guilty of extreme cruelty toward plaintiff; No. 4 found that plaintiff was entitled to all the real estate (town lots) he owned at the time of the marriage; No. 5, that there should be set aside to defendant all the real and personal property owned by her at the time of the marriage or afterwards separately acquired by her (by inheritance from her mother) and that she should also be given the equivalent of any personal property she owned at the time of her marriage which was no longer owned by her; No. 6, that all other property was the joint accumulation of the parties and should be equally divided between them, and provision should be made out of the plaintiff's share for the support and maintenance of the minor son; No. 7, that plaintiff at the time of the marriage had $6,500 in cash on deposit in a Parsons bank, $6,000 of which was transferred to the Coffeyville bank in which defendant kept the family funds, and that plaintiff's deposit in the latter bank steadily diminished until on December 14, 1933, it was extinguished; No. 16, that in October, 1923, there was a deposit of $3,079.04 in the Coffeyville bank in defendant's name, but it represented the joint accumulation of the parties and was used in the purchase of the quarter section adjoining the home place; No. 17, that while

plaintiff and defendant never had a banking account in their names jointly, defendant wrote and signed practically all checks on the bank in handling their joint business transactions; No. 18, found that certain described town lots and personal property should be decreed to plaintiff absolutely free of any claim or title by defendant, and also an undivided half interest in the lands purchased and acquired by the parties; No. 19, found that the home place should be decreed to defendant free of any claim of plaintiff, and also an undivided one-half interest in all the after acquired lands, and likewise a scheduled list of the personal property to be set apart to her absolutely. No. 22 was a finding of $1,225 worth of farm animals and farm machinery which should be divided as jointly acquired property. No. 23 was a finding of some $605 worth of farm animals and machinery which should be set over to plaintiff absolutely; and No. 24 set over to defendant farm animals and machinery to the value of $620. No. 26 was a finding that provision should be made in a lump sum out of the property separately decreed to plaintiff for the support and maintenance of the minor son; and No. 27 was a finding that all the farm animals and farm machinery separately awarded to plaintiff by finding No. 23 and likewise the undivided one-half interest in one quarter section (SW¼, 4-34-18 E) separately decreed to plaintiff by finding No. 18 should be set aside and delivered to defendant for the support and maintenance of the minor son.

Passing finding No. 3 for the moment, we discern nothing in the trial court's lengthy findings which supplies even a good talking point against them; and a careful perusal of the record convinces this court that the findings were supported by ample competent evidence which it would serve no helpful purpose to incorporate in this opinion. (*State v. Rose,* 124 Kan. 37, 257 Pac. 731; *Newton v. Newton,* 127 Kan. 624, 274 Pac. 247; *State v. Martin,* 155 Kan. 801, 805, 130 P. 2d 601.)

Error is also assigned on the trial court's conclusions of law which were deduced from the findings of fact. It cannot be gainsaid that since the findings of fact were supported by evidence, the conclusions of law and judgment predicated thereon were proper—certainly in no material respect erroneous. In the apportionment and division of the accumulated property of discordant spouses being divorced, the trial court has a wide discretion which will not be disturbed unless its judgment is manifestly or demonstrably shown by the record

to be palpably unjust. (*Tillery v. Tillery*, 115 Kan. 81, 222 Pac. 100; *Wittig v. Wittig*, 151 Kan. 440, 99 P. 2d 750; *Leiter v. Leiter*, 152 Kan. 287, 103 P. 2d 809.) Nothing of that sort is apparent in the case at bar.

Recurring now to the challenged finding No. 3, which found defendant guilty of extreme cruelty toward plaintiff, it is contended that the finding was not sustained by sufficient evidence. Extreme cruelty as a basis for the granting of a divorce under the statute (G. S. 1935, 60-1501) does not necessarily imply physical violence towards the party seeking a divorce. While plaintiff's evidence of repeated acts of physical violence practiced upon him by his wife was clear and positive, her counsel say there was no corroboration of the husband's evidence; and that standing alone it was insufficient to support plaintiff's cause of action in view of G. S. 1935, 60-1509. But plaintiff's testimony of his wife's physical violence towards him was well corroborated in certain instances. Thus where plaintiff testified that his wife struck him in the face with a screw driver, and this blow raised a swelling which shut off the vision of one eye for a time, within a few days thereafter the husband and wife were at a neighbor's house and the neighbor inquired how he got his eye hurt. The defendant wife spoke up, "I done it. I hit him in the eye with an iron I had in my hand." The neighbor said, "You might have knocked his eye out." The defendant replied, "That is what I intended to do."

We regard this neighbor's testimony as sufficient to satisfy the statutory requirement of corroboration.

There were other flagrant instances of violence which were practiced by defendant and her son on the plaintiff. Some of these were corroborated by circumstantial evidence, and in some instances perhaps not; but some such acts of physical violence were sufficiently proved to establish plaintiff's cause of action. Moreover, and aside from instances of defendant's physical violence and of the son's physical violence aided and abetted by his mother, extreme cruelty as contemplated by the divorce statute is not limited to acts of physical violence. Indeed physical violence, which of course may furnish a cause of action for a divorce on the statutory ground of extreme cruelty, is perhaps rare in this jurisdiction, particularly by a wife against her husband; but there are other matters of unjustifiable marital misconduct which will support a cause of action for a divorce on the ground of extreme cruelty. In our notable early

case of *Carpenter v. Carpenter*, 30 Kan. 712, 744, 2 Pac. 122, it was said:

"It was formerly thought that to constitute extreme cruelty, such as would authorize the granting of a divorce, physical violence is necessary; but the modern and better-considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part of either the husband or the wife, which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other as to seriously impair the bodily health or endanger the life of the other, or such as in any other manner endangers the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' under the statutes, although no physical or personal violence may be inflicted, or even threatened. (Citations.)"

To the same effect were *Avery v. Avery*, 33 Kan. 1, 5 Pac. 418; *Williams v. Williams*, 106 Kan. 751, 189 Pac. 910. And see, also, 9 R. C. L. 335, 336; 17 Am. Jur. 174, 175; 27 C. J. S. 544-548.

The record in this case is replete with evidence showing a course of conduct on the part of defendant towards her husband which tended to humiliate and degrade him, and which could properly be characterized as extreme cruelty. One such incident occurred when defendant sought to have him prosecuted on a baseless charge of having burned the barn on the farm where they resided. Within the rule of *Carpenter v. Carpenter*, supra, the trial court's finding No. 3, and its conclusion of law and its judgment based thereon were correct.

The other errors urged against the judgment have been duly noted, but they do not warrant discussion.

Before concluding we note another matter complained of by defendant. After this case was appealed to this court and her abstract and brief were on file, plaintiff reappeared in the district court with a motion for a *nunc pro tunc* order to correct certain discrepancies in the court's conclusions of law, particularly in respect to the numbers of the findings of fact to which the conclusions of law referred. The order was made. Counsel for defendant contend that the discrepancies in the findings of fact could not be corrected by an order *nunc pro tunc*, and that the term at which the judgment had been entered had gone by. (*Gaston v. Collins*, 146 Kan. 449, 455, 72 P. 2d 84.) We do not think the order which the court made violated the rule that judgments may not be altered after the term. The corrections which were made might fairly be said to fall within the rule that manifest clerical inadvertencies in the record can be

corrected *nunc pro tunc.* (30 Am. Jur. 873-877.) Moreover, the order *nunc pro tunc* did not alter a word of the judgment, but only altered what were obviously inadvertent figures used in the conclusions of law when referring to the numbered findings of fact. If the trial court had not made these corrections, this court would have had no difficulty in discovering for itself the particular findings of fact to which the conclusions of law were intended to refer.

We find no material error in the record and the judgment is affirmed.