No. 43,686

H. L. PRESTON, *Appellee,* v. G. PRESTON, *Appellant.*

(394 P. 2d 43)

Opinion filed July 14, 1964.

*Douglas Hudson,* of Fort Scott, argued the cause, and *Howard Hudson* and *Douglas G. Hudson,* both of Fort Scott, were with him on the briefs for the appellant.

*Charles Rooney, Sr.,* of Topeka, argued the cause, and *Charles Rooney, Jr.,* and *James R. Ward,* both of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from a divorce action brought by the husband, H. L. (Harlow) Preston, against his wife, G. (Gaynelle) Preston. Each party has charged the other with extreme cruelty and gross neglect of duty. After a thorough hearing, the trial court granted the husband a divorce on the ground of extreme cruelty; awarded the wife household goods, the 1956 Cadillac in her possession, and $10,000.00 alimony payable $150.00 per month; awarded the husband the real estate at 708 Kansas Avenue and the balance of the personal property; and ordered that plaintiff pay an additional fee of $500.00 to defendant's attorney. This appeal is by the defendant wife from such judgment.

The contentions of the defendant, as set out in the brief filed by her able counsel, are three in number: First, that she should

have been granted the divorce; second, that the "niggardly" award to her should be disapproved; and third, that the money award should be made a lien against defendant's real estate. These will be considered in order.

From the record it may be gleaned that the parties were married in October, 1939, and that they have no children. At the time of their marriage Harlow was employed by the Federal Revenue Service at $150.00 per month, and Gaynelle was a telephone operator making from $125.00 to $135.00 monthly. Both continued to work during the early years of their marriage, and they lived together in comparative harmony until Harlow entered military service in World War II.

Their married existence continued to flow in relatively peaceful channels throughout the war, although there is evidence that Gaynelle was angered when Harlow went into the army. However, she quit work and lived with her husband before he was sent overseas and then went to reside with her parents. Harlow allotted Gaynelle $100.00 per month while he was overseas and sent her $2,500.00 in addition. By the time of Harlow's return $6,000.00 in bonds had been accumulated, some $400.00 of which Gaynelle bought from the $1,400.00 or $1,500.00 she received from the sale of the Preston car. Harlow also had about $1,800.00 mustering out pay. About this time, an investment of $11,000.00 was made in a pool hall, which ultimately resulted in a $10,000.00 loss.

It is not clear just when their amicable relationship began to deteriorate or what was the cause of its decay. Whatever may have been the origin of dissension, the year 1953 saw the parties separated. The following year witnessed their reconciliation which endured, as the record reveals, until their final divergence in November, 1958. Thereafter, the parties lived apart, with Harlow, according to his evidence, supplying Gaynelle with substantial sums of money as well as paying her car expense and liquor bills.

No good purpose would be served in depicting in detail the evidence of either side. Harlow's evidence, as corroborated, showed that Gaynelle commonly, and with no discretion, belittled him, his deceased father, and his friend and benefactor, Pete Charowhas, also deceased; that she complained of her husband's failure to provide her with vacations, and of having to live in apartments and of Harlow's not buying a home; that on nocturnal social occasions she would become quarrelsome and argumentative

and refuse to go home unless forced to leave; and that on a couple of such occasions she had to be taken home.

It is quite true that much of the defendant's offensive conduct may have occurred when she was drinking, or as one witness said, "had a few snorts under her belt," but not all of her complaints about or disparagement of her husband may be attributed to insobriety. For, despite her cavalier counsel's mellifluous assertions that Harlow held the mellow cup of Bacchus to her lips while his partner drained the sweetness of its contents, there is little, if any, evidence to reflect reluctance on the part of Gaynelle to accept the proffered draughts.

We think the evidence was ample to establish a course of conduct on the part of the defendant sufficiently disruptive of matrimonial harmony and humiliating to her husband as to be characterized as extreme cruelty within the meaning of the statute. This court has long held that physical hurt is not required to meet the law's intention. In *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127, it was said:

". . . Extreme cruelty as contemplated by the divorce statute is no longer regarded as being limited to acts of physical violence. The modern and better considered cases have repudiated the ancient doctrine requiring physical violence as too low and sensual a view of the marriage relation. It is now generally held, and in this state it has long been the rule, that any unjustifiable and long practiced course of conduct by one spouse towards the other which utterly destroys the legitimate ends and objects of matrimony constitutes extreme cruelty though no physical or personal violence may be inflicted, or threatened. (*Carpenter v. Carpenter,* 30 Kan, 712, 2 Pac. 122; *Stegmeir v. Stegmeir,* 158 Kan. 511, 518, 148 P. 2d 755, and cases therein cited.) Under some circumstances it may not be necessary that such conduct should continue over a long period to constitute extreme cruelty." (p. 193.)

See also *Walton v. Walton,* 166 Kan. 391, 202 P. 2d 197; *Brown v. Brown,* 171 Kan. 249, 232 P. 2d 603, 32 A. L. R. 2d 102.

Admittedly, the defendant's own testimony contradicts that of her husband in many respects. Furthermore, the record contains abundant evidence which, if credited by the trial court, would have supported a judgment awarding the defendant a divorce. However, it is not the function of this court to weigh conflicting evidence or to substitute its judgment for that of the judge by whom the case was tried. The reason underlying this salutary legal principle was well expressed in *Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215, where the court said:

". . . An able and experienced trial judge heard and saw the parties. This advantage enabled him to judge more fairly and accurately the credibility and probative value of their testimony than this court can. Much weight is to be given to the findings of the trial court in cases of this kind. . . ." (p. 431.)

On conflicting evidence, the trial court in the instant case determined that a divorce should be granted plaintiff on the basis of extreme cruelty. We cannot say, from a review of the record, that such decision was wholly lacking in evidentiary support. Accordingly, the trial court's determination must stand.

The defendant next asserts that the award to her was "niggardly," and for such reason should be disapproved. In passing on this phase of her complaint, note need be taken of the relevant provisions of G. S. 1949, 60-1511:

". . . If the divorce shall be granted by reason of the fault or aggression of the wife, the court *shall* order restoration to her of the whole of her property, lands, tenements and hereditaments owned by her before, or by her separately acquired after such marriage, and not previously disposed of, and also the court *may* award the wife such share of her husband's real and personal property, or both, as to the court may appear just and reasonable; . . . And to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court *shall* make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. . . ." (Emphasis supplied.)

A brief resumé of the evidence relating to property shows assets existing at the time of the divorce amounting to $57,876.68, plus two Cadillac cars of unknown value; one a 1949 model, the other a 1956. (The '56 Cadillac was bought in 1957 for $3,500.00 and plaintiff's brief avers the evidence indicated it was worth $2,500.00, with the older car worth $200.00.) Outstanding indebtedness was $7,500.00, leaving a net worth of $50,376.68. By far, the major asset was the Topeka business property at 708 Kansas Avenue, whose value was stipulated as being $50,000.00. This building was willed to Harlow by his old friend, Pete Charowhas, who was the object, it was said, of disparagement by Gaynelle. Gaynelle herself had received an inheritance of $3,000.00 from her father, $1,000.00 of which went into the 1956 Cadillac and the balance into her furniture and clothing.

Considering as jointly acquired property the payments which Harlow made on the mortgage against the building and the improve-

ments placed on the building after it was acquired, the value of the property jointly acquired by the parties subsequent to their marriage adds up to $35,304.77. This total must be reduced by current indebtedness of $7,500.00, leaving a net value of jointly acquired property of $27,804.77, plus, as previously noted, two Cadillacs of somewhat ancient vintage and speculative worth.

As before stated, the court awarded Gaynelle the household furniture, the 1956 Cadillac and $10,000.00, payable in installments, while setting over to Harlow the Kansas Avenue real estate and the remaining personal property. In approaching the question of whether that division was inequitable, we are bound by the well-established and often reiterated rule that the trial court is possessed of wide discretion in such matters and that its judgment is not to be overturned unless there has been an abuse of discretion. In *Thompson v. Thompson*, 168 Kan. 450, 213 P. 2d 641, it was said:

". . . As a matter of fact, the, real question is whether the property division made was equitable. The question of the division of property between spouses who have found it necessary to get a divorce is one of wide discretion. In *Rumsey v. Rumsey*, 150 Kan. 49, 90 P. 2d 1093, we held:

" 'The trial court has a wide discretion in the allowance of alimony and attorney fees, and its exercise of that discretion, unless clearly abused, will not be disturbed on appeal.' " (p. 453.)

In *Dikeman v. Dikeman*, 191 Kan. 68, 379 P. 2d 314, it was held:

"An award of alimony and division of property made by the district court in a divorce action will not be disturbed on appeal unless it is clearly shown that there was an abuse of discretion." (Syl. ¶ 2.)

Our cases abound in statements to like effect but further citation is deemed superfluous.

Measured by the foregoing rule, may the trial court's judgment as to property be set aside? Clearly, this depends on whether an abuse of discretion has been shown. Before proceeding to that problem, we should say that we regard the $10,000.00 awarded the defendant to be in the nature of a division of property rather than alimony, even though the latter designation was used by the trial court. This must of necessity be so, since the statute contains no provision for allowance of alimony when a divorce is granted for fault of the wife, while division of jointly acquired property shall be made regardless of fault, and may be effected by setting aside property to one spouse and decreeing money paid to the other.

Passing to the question of whether the award to the errant

wife was equitable or not, our reports disclose no precise formula for use. Despite its great achievements, science has not yet devised an instrument with which to measure equity. No percentage has ever been adopted by this court as the unvarying mean of what, in every case, is just.

Cases are cited by defendant where $300.00 alimony was held inadequate when the husband owned property worth $6,000.00 to $8,000.00, and the wife owned $1,000.00 to $1,500.00, and the award was increased to $1,000.00 (*Imhoff v. Imhoff*, 112 Kan. 727, 212 Pac. 886); where $400.00 alimony was held inadequate when compared to the husband's estate of $3,000.00 and his earning capacity, and $552.00 was added to the award (*Flautt v. Flautt*, 126 Kan. 21, 266 Pac. 746); and where $250.00 out of property worth $4,000.00 to $5,000.00 was held insufficient, and the award was doubled (*Savage v. Savage*, 141 Kan. 851, 44 P. 2d 272).

The defendant also cites *Mann v. Mann*, 136 Kan. 331, 15 P. 2d 478, in which an award of $9,150.00 to the wife was held inadequate when her husband, by his own estimate, owned property worth $30,250.00. Although the court stated that the award of less than one-third was inequitable, it is noted the divorce was granted the wife, not the husband. Plaintiff's counsel calls attention to other distinguishing features which are apparent from reading the decision.

While it is true this court observed in *Flautt v. Flautt*, supra, that ". . . there are many cases in which one-half of the estate was deemed a proper allowance. . . ." (p. 24), our cases actually affirm the proposition that there is no fixed rule for deciding what proportion of the husband's estate should be allowed as alimony. The amount must be determined in the light of the circumstances which exist in each individual case. (See *Newton v. Newton*, 127 Kan. 624, 274 Pac. 247; *Walno v. Walno*, 164 Kan. 620, 192 P. 2d 165, and cases cited therein.)

In the instant case the wife was found to be at fault. Under the court's decree she now possesses all her inheritance in the guise of property for which it was expended—clothing, household furnishings and Cadillac car. In addition, she has an award of $10,000.00, which exceeds 35% in value of all the property which could possibly be considered as jointly acquired. In view of such circumstances, and giving consideration, also, to all of the other facts and circumstances shown in this opinion, we are not able to say that the trial

court abused its discretion, even though a more generous award to the wife might have found substantial support from the record.

A final point is made by Gaynelle that the monetary award is unsecured, and is thus subject to the hazard of loss. We believe there is merit in this contention. The lion's share of the award is composed of the $10,000.00 to be paid her, since the furniture set over to her appears to have been purchased by her, and the 1956 Cadillac must be presumed worth considerably less than its 1957 purchase price of $3,500.00.

Although not all the factors present in *Besse v. Besse,* 137 Kan. 371, 20 P. 2d 539, are found here, we believe the general principle there expressed is applicable to the facts before us. Payable at the rate of $150.00 per month from April 1, 1963, the award to Gaynelle will not be fully paid for some forty-one months from this time. Contingencies might well occur in the interim which would imperil the full collection of her award. Examples of such contingencies are not hard to imagine.

It has been held by this court that an allowance of permanent alimony payable in installments does not create a lien upon the husband's property unless the court makes provision to such effect in its judgment. ( *Scott v. Scott,* 80 Kan. 489, 103 Pac. 1005; *McGill v. McGill,* 101 Kan. 324, 166 Pac. 501; *Beasley v. Salkeld,* 131 Kan. 211, 289 Pac. 471.) We believe that it would not be fair to compel the defendant, under the facts of this case, to rely solely on proceedings in the nature of contempt for the enforcement of her monetary award, but that such award should be made a lien upon plaintiff's real estate at 708 Kansas Avenue, Topeka, Kansas. The trial court is directed to modify its judgment accordingly.

As so modified, the judgment of the trial court is affirmed.

PRICE and ROBB, JJ., not participating.