No. 45,114

James O. Greene, *Appellant,* v. Uva P. Greene, *Appellee.*

(443 P. 2d 263)

Opinion filed July 13, 1968.

*Max E. Eberhart,* of Great Bend, argued the cause, and *H. Lee Turner* and *J. Eugene Balloun,* of Great Bend, were with him on the brief for the appellant.

*Hugh D. Mauch,* of Great Bend, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: James and Uva Greene, having reached the end of a long and discordant marital relationship, were granted a divorce each from the other on the ground of extreme cruelty. Uva was awarded custody of the minor children and also received the equity in the residential real estate. James, being dissatisfied with the decree of the lower court, has appealed.

The couple was married in Hot Springs, Arkansas, August 9, 1944, when James was thirty-six years of age and Uva was only seventeen. Four children were born of the marriage. At the time of trial the eldest, Karen, was self-supporting and no longer lived at home. The other children ranged in age—ten, twelve and fourteen years.

James, although formerly employed as a merchandise manager for a department store, suffers from arthritis and is unable to work. He draws total disability benefits from the Veterans Administration and Social Security totaling $627 per month. Uva is employed in a department store, earning approximately $45 weekly, and also is a part-time real estate saleswoman. Because of his physical condition, James remains at home, prepares some of the meals and does part of the housework.

Trouble developed early in the marriage. In fact, this is the third time James has filed suit for divorce—the other occasions being in 1951 and 1964. The marriage has been marked with bitter

quarrels. By her own admissions, Uva has committed certain indiscretions with other men and has frequently been gone from home in the evenings, returning at a late hour. According to Uva, James has a bad disposition and temper, and during the past five years his physical condition has been a "problem." He frequently refuses to talk to her, and this has led her to leave home in the evenings, "To get away from it, to have companionship, somebody to talk to." James has often belittled Uva in front of their friends and "treated her like she was inferior." The trial court specifically found that James' attitude toward Uva during the marriage was unreasonable and oppressive. Further details of the parties' conduct would be of no credit to either of them. Suffice it to say, the institutional graces oft considered a part of the marriage relationship have ceased.

Contrary to James' request, the lower court found a separation agreement executed by the parties during their earlier difficulties in 1951 was unfair and inequitable and, therefore refused to enforce the same. In the division of the property the residence, in which there was an equity of approximately $4,500, was assigned to Uva, and James was given a lien against the property in the amount of $2,500. The parties were awarded their separate automobiles and bank accounts. The court refused to allow Uva any alimony.

James complains that the trial court erred in granting Uva a divorce, although he hastens to assure us he voices no objection to that portion of the decree granting him a divorce for Uva's fault. Specifically, he argues that Uva's testimony is not corroborated, as required by K. S. A. 60-1609($d$). Among her grievances against her husband, Uva testified about James' humiliating her in front of friends. The extent to which this evidence is corroborated is reflected by the testimony of Mrs. Joanne Rondeau who appeared as a witness in Uva's behalf and told about James' conduct at bridge parties where he belittled Uva and treated her as if "he was real superior to her." She further testified that when the Greenes entertained guests in the home, "Everybody was uncomfortable because he picked on her, and it was so unfair, and it made everybody have a bad time."

The corroboration required by the statute need not support each and every detail of the injured party's testimony, nor every complaint of mistreatment throughout the turbulent course of a marriage. Likewise, it is not essential that corroborating testimony

alone sustain the judgment. It is sufficient that the corroboration be such as will tend to establish some fact or facts testified to by the complaining party, which, if believed, would justify the granting of a divorce. (*Saint v. Saint,* 196 Kan. 330, 411 P. 2d 683; *Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746; *Carter v. Carter,* 191 Kan. 80, 379 P. 2d 311; *Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215.) In *Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677, we said that in testing the sufficiency of evidence for corroborative purposes:

". . . Mere corroboration of indignities and abuses which do not relate to the grounds for divorce is insufficient. The requirement is met, however, if there exists corroborated testimony of acts or conduct sufficient to justify a judgment of divorce on statutory grounds. (*Gardner v. Gardner,* supra; *Kelso v. Kelso,* supra [182 Kan. 665, 324 P. 2d 165]; *Tuley v. Tuley,* 168 Kan. 106, 211 P. 2d 95.)" (p. 383.)

A decision based on testimony corroborative in nature and convincing to the trial court will not be disturbed on appeal. (*Kelso v. Kelso,* supra.)

We are of the opinion there was sufficient corroborative testimony from which inferences could be drawn that the legitimate ends and objects of matrimony had utterly been destroyed by James' actions. From Uva's evidence, corroborated as it was, the trial court was warranted in holding that James was guilty of extreme cruelty as contemplated by the divorce statute (K. S. A. 1965 [now 1967] Supp. 60-1601). (*Preston v. Preston,* 193 Kan. 379, 394 P. 2d 43; *Carter v. Carter,* supra; *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127.)

James also asserts that the trial court abused its discretion in granting custody of the children to Uva. He points to Uva's misdeeds and past actions as showing there is little assurance she will offer the parental guidance needed by the children. He also emphasizes the testimony of the family pastor that the best interests of the children would be served by their being placed in the father's custody, as well as the testimony of the fourteen-year-old son that the children desired to be with their father. The evidence on the issue, however, was conflicting. There was testimony concerning James' bad disposition and displays of temper, his difficulties with the oldest girl who is now living outside the home, and his attitude toward another son. Additionally, there was testimony by two of Uva's friends that in their opinion Uva loved the children and would take care of them.

When the issue of custody is between parents, the paramount consideration of the court is the best interests and welfare of the children, and in the absence of abuse of sound judicial discretion, the trial court's judgment determining the issue will not be disturbed on appeal. (*Moran v. Moran*, supra; *Bergen v. Bergen*, 195 Kan. 103, 403 P. 2d 125; *Whitebread v. Kilgore*, 193 Kan. 66, 391 P. 2d 1019; *Gardner v. Gardner*, supra; *Goetz v. Goetz*, 184 Kan. 174, 334 P. 2d 835.) Although from the facts disclosed here we might not have reached the same conclusion as that of the trial court had we been determining the question initially, we are unable to say there was insufficient evidence to sustain the court's judgment, or that the record affirmatively shows there was a manifest abuse of discretion. We have only the printed page, whereas the trial court, in considering the best interests of the children, had the advantage of seeing the witnesses and parties, observing their demeanor, assessing the character of each parent and the nature and quality of their affection and feeling for the children. If, as time progresses, circumstances require a change or modification of the custody order, the trial court has continuing jurisdiction to act pursuant to K. S. A. 1965 [now 1967] Supp. 60-1610 (*a*). (*Moran v. Moran*, supra; *Bergen v. Bergen*, supra.)

A child's preference in custody matters may, of course, be considered as an aid to the court in making a proper order. (*Wilkinson v. Wilkinson*, 147 Kan. 485, 77 P. 2d 946.) Such preference, however, is always subordinate to the over-all best interests and welfare of the child. Thus, when there are objective factors affecting the child's welfare that are contrary to his wishes, the latter must yield to the former. (See, Anno. 4 A. L. R. 3d 1396.) Without going into detail, we find in this case the trial court did not abuse its discretion in awarding custody to the mother, notwithstanding there was some evidence the children preferred to go with their father.

James has also appealed from that portion of the decree setting aside the residence to Uva; but on oral argument he conceded that the house should go to the party to whom custody of the children is given. Our conclusion on the custody question effectively disposes of this point.

The judgment is affirmed.