No. 45,142

Dorothy E. Haynes, *Appellee*, v. T. M. Haynes, *Appellant*.

(446 P. 2d 749)

Opinion filed November 9, 1968.

*Ernest J. Rice*, of Topeka, argued the cause, and *Marlin S. Casey, Glenn D. Cogswell, Gerald L. Goodell, Wayne T. Stratton, Robert E. Edmonds, Arthur E. Palmer, Thomas E. Wright*, and *Chester A. Arterburn, Jr.*, all of Topeka, were with him on the briefs for the appellant.

*Louis F. Eisenbarth*, of Topeka, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: Defendant-appellant, T. M. Haynes, has appealed from a judgment granting a divorce on the grounds of extreme cruelty and gross neglect of duty to plaintiff-appellee, Dorothy E. Haynes.

Plaintiff was a widow, sixty years of age, and defendant a widower, sixty-four years of age, at the time of their marriage on April 2, 1966. After living together for about three months the parties separated and plaintiff filed this action on August 1, 1966. Plaintiff filed a bill of particulars with the trial court and defendant filed his answer in the form of a general denial praying that a divorce be denied.

Defendant offered no evidence at the trial and after hearing plaintiff's evidence the trial court announced its findings; pertinent portions of which we quote:

"All right, gentlemen, I don't have any problem with this lawsuit, and this is the finding of the Court, that the defendant did not provide a home for the wife, he failed to fulfill his promises in this regard, he lived in her home instead and also failed to provide money in keeping with his pretended means. Following the honeymoon she bought the automobile, a new automobile, she paid for much of the household expenses and I'm satisfied that in this approximately 10 weeks following the honeymoon he lived primarily on her money and that immediately following the honeymoon his attitude towards her and her friends and her money became intolerable and amounted to gross neglect of duty and extreme cruelty. Now, the defendant's principal defense in this case, in fact, he didn't take the stand in his own defense, is that she hasn't proved it with some corroborating evidence. Now, not every detail of

plaintiff's evidence has to be corroborated in a divorce suit but a sufficient amount of it has to be in order to give credence and substance to her testimony in regard to the grounds of divorce that she claims. I think there was sufficient corroboration now that he lived in her house and also in the exhibits that plaintiff has presented, exhibits 1 through 11, and it's been substantiated to some extent by the testimony of other witnesses. . . ."

On appeal defendant contends that plaintiff's evidence is insufficient to support the judgment and even if sufficient it is not corroborated, as required by K. S. A. 60-1609 (*d*).

Plaintiff's evidence consisted of her testimony, that of three other witnesses, and a number of exhibits offered for purposes of corroboration.

In his brief defendant concedes that this court will sustain a trial court's findings in a divorce case where there is any competent evidence to support it.

Plaintiff testified that the parties met between Christmas and New Years of 1965 and were married on April 2, 1966, that prior to the marriage the parties entered into a prenuptial agreement which was admitted in evidence. Plaintiff described her financial assets as a home and other real estate, a bank account, a savings and loan account, farm acreage, rental houses and buildings and money in her attorney's hands. She further testified that during the period of their courtship defendant lived in Kansas City and she lived in Topeka. Defendant told her that he was by profession "a highly trained engineer" and the senior member of Haynes and Associates, Engineers; that he had been a general contractor and constructed many buildings in Kansas City; that he was a partner in the T. & H. Construction Company, Inc.; and that he hoped to be active until he recovered a $50,000 or $60,000 investment he had in his "unique swimming pool casting and design."

Plaintiff further testified, that relying on statements of defendant, she understood that after their marriage they were going to live in Kansas City in a home provided by him. She prepared an announcement of their marriage for publication in the Topeka Daily Capital, a copy thereof was admitted in evidence and included the following:

"After a wedding trip to Miami, Nassau, and Washington, D. C., the couple will be at home in Kansas City where Mr. Haynes is senior member of Haynes and Associates, Engineers."

Plaintiff testified that she submitted the announcement, before it

was published, to the defendant who looked it over and expressed no disapproval.

After the marriage the parties took a trip lasting approximately three weeks and terminating in Washington, D. C. Plaintiff testified that defendant indicated the purpose of the trip to Washington was to visit with a congressman relative to loans for small communities for recreational purposes pertaining to the swimming pool construction business. When the parties arrived in Washington defendant did not have the business records necessary to confer with the congressman and he was running out of money. He requested his son in Kansas City to forward the records and to advance money. Defendant was advised by his son that there was no money to send and that there were insufficient funds to meet the current payroll. Plaintiff advanced some money to defendant, which was repaid, and the parties returned to Kansas City.

The trial court's findings that defendant failed to provide a home and that they lived primarily on her money are supported by the testimony of plaintiff and corroborated by exhibits in the form of receipts for utility bills and cancelled checks written by both plaintiff and defendant. The checks were written on a bank account of plaintiff to which defendant's name was added after the marriage. Defendant made one deposit in the amount of $600, more than half of which was used for the purchase of a new rug for plaintiff's home. Plaintiff testified there was money going out but only rent collections on her properties coming in.

Plaintiff also testified that she was "humiliated to death" because they did not move to Kansas City, as stated in the announcement of their marriage, but that she could not bring herself to press defendant for an explanation when there was not enough money to meet the payroll of defendant's business.

A witness described plaintiff's embarrassment when the subject of the failure to move to Kansas City was brought up during a visit in plaintiff's home.

Plaintiff further testified that she was unable to communicate with defendant about their affairs; she knew defendant did not love her —that all he cared about was her money; that he complained about the irregular appearances of her tenants when they came to pay the rent, and that he was annoyed when tenants called to request repair work on the rental properties. She stated that defendant usually did the necessary repair work but complained about it and

also complained when she paid anyone else to do the work. Plaintiff testified defendant made it plain that her friends were strangers to him. Plaintiff further testified that when she confronted defendant concerning his change in attitude toward her he refused to discuss the matter.

A witness called by plaintiff testified that defendant had told her the parties were going to live in Kansas City after the marriage; that on another occasion defendant criticized plaintiff for making snap decisions; and that the parties had lived in plaintiff's home since the marriage.

One of plaintiff's tenants testified that on one occasion when he asked plaintiff to have an incinerator fixed he was asked by defendant "why I didn't fix it or couldn't I fix it."

Another witness called by plaintiff testified that he and his family were close friends of plaintiff and visited the parties after the marriage. He stated that he explained to plaintiff why he and his family had not called sooner because he thought the parties were living in Kansas City. He also stated he immediately changed the subject because the plaintiff's face colored.

Interrogatories submitted by plaintiff to defendant, prior to trial, disclose that there were no books and records of Haynes and Associates, Engineers; that the T. M. Haynes Corporation was inoperative; and that defendant was not a stockholder of the T. & H. Construction Company, Inc., but had only a right of assignment to some of the stock.

It is true, there is no showing of physical violence on the part of defendant, but this court has frequently held that physical abuse is not required to constitute extreme cruelty. (*Saint v. Saint,* 196 Kan. 330, 411 P. 2d 683; *Preston v. Preston,* 193 Kan. 379, 394 P. 2d 43; *Brown v. Brown,* 171 Kan. 249, 232 P. 2d 603, 32 A. L. R. 2d 102; *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127.)

The trial court specifically found that defendant's attitude toward plaintiff, her friends and her money, became intolerable. A course of conduct on the part of one spouse which has become intolerable to the other, so as to disrupt domestic harmony and to destroy legitimate matrimonial objectives, has often been characterized as behavior amounting to extreme cruelty. (*Saint v. Saint,* supra.) Furthermore, it is not always necessary that such conduct should continue over a long period of time. (*Brown v. Brown,* supra; *Davis v. Davis,* 162 Kan. 701, 178 P. 2d 1015; *Stegmeir v. Stegmeir,* 158 Kan. 511, 148 P. 2d 755.)

The divorce in the instant case was granted on both grounds of extreme cruelty and gross neglect of duty. These grounds for divorce overlap to a considerable degree. An act of misconduct may fall into either category. Cruelty has been recognized as a possible element in gross neglect of duty. (*Kelso v. Kelso,* 182 Kan. 665, 324 P. 2d 165.) In the instant case we believe the evidence sufficient to support the judgment for divorce on either ground.

An able trial judge of many years experience heard the testimony, viewed the demeanor of the witnesses, and made positive findings as quoted. Such being the case, our judgment cannot be substituted for the findings of the trial judge on the showing made by defendant in this appeal. (*Saint v. Saint,* supra; *Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478; *Preston v. Preston,* supra; *Hoppe v. Hoppe,* 181 Kan. 428, 312 P. 2d 215.)

We are fully aware of the settled rule that the testimony given by a complaining spouse as to the delinquencies of the other spouse must be corroborated by evidence. The provisions of 60-1609 (*d*), supra, contain no exceptions, and courts are not permitted to nullify its intentment by reading exceptions into it. (*Greene v. Greene,* 201 Kan. 701, 443 P. 2d 263; *Moran v. Moran,* 196 Kan. 380, 411 P. 2d 677; *Gardner v. Gardner,* 192 Kan. 529, 389 P. 2d 746.) However, we believe the corroboration here to be ample under the rules for testing the sufficiency thereof, laid down in the cases cited. Corroboration need not support each and every detail of the injured party's testimony, nor is it essential that corroborating testimony alone sustain the judgment. It is sufficient if the corroboration be such as will tend to establish some fact or facts testified to by the complaining party, which, if believed, would justify the granting of a divorce.

In *Saint v. Saint,* supra, the corroboration of plaintiff's testimony consisted of the testimony of two children of plaintiff that on occasions "their stepmother would stomp or stalk from the room and betake herself to the basement, where she would pout and sulk." In holding corroboration sufficient we stated:

". . . While neither of these witnesses were able to confirm their father's evidence in all its details, minute corroboration was not essential to establish the validity of his case. . . . " (p. 332.)

This court has stated the principal reason for the requirement of corroboration has been, and is, for the prevention of collusion be-

tween the parties to a divorce. (*Carter v. Carter*, 191 Kan. 80, 379 P. 2d 311, *Hoppe v. Hoppe*, supra; *Brown v. Brown*, supra.)

In this case there is nothing in the record to indicate collusion— the contrary is clearly shown. In the instant case there is not only direct testimony, but also circumstantial evidence, which the trial court could and did believe, that defendant's actions deeply wounded plaintiff's feelings and worried her greatly, and that the legitimate ends of matrimony had been destroyed thereby. Corroborative testimony may be circumstantial as well as direct. A decision based on testimony corroborative in character and convincing to the trier of facts will not be disturbed on appeal. (*Carter v. Carter*, supra; *Hoppe v. Hoppe*, supra; *Kelso v. Kelso*, supra; *Tuley v. Tuley*, 168 Kan. 106, 211 P. 2d 95.)

In view of what has been said we are of the opinion the record discloses sufficient evidence and corroboration thereof, both direct and circumstantial, to support the judgment rendered by the trial court, and the judgment must be affirmed.

FONTRON, J., dissenting: After combing the record with care, I am unable to find any corroboration of the charge that the defendant was extremely cruel toward and grossly neglectful of his spouse. Without going into detail, the most that can be said of the corroborating evidence, is that it might corroborate incompatibility, which, in all seriousness, is all that the plaintiff's own testimony actually establishes.

However, incompatibility is not a ground for divorce in Kansas, and it will not do for this court to equate the term with either gross neglect of duty or extreme cruelty. If an eighth ground is to be added, as ground for divorce, to those already set forth in K. S. A. 1967 Supp. 60-1601, that addition should be accomplished by legislative enactment, not by judicial interpretation.

I would reverse the judgment. Hence, I respectfully dissent.